<div style="text-align:center">JUDGMENT AFFIRMED.</div>

<div style="text-align:right margin">1819.<br>Wicks<br>vs<br>Chew</div>

---

<div style="text-align:center">WICKS, *et al.* vs. CHEW, *et al.*</div>

<div style="text-align:right">DECEMBER.</div>

APPEAL from the Court of Chancery. On the 11th of
September 1816, *Araminta Chew,* and others, (the appellees,) by *John Davis* their next friend, filed a petition
against the *heirs and devisees* of *Richard Darnall,* deceased, stating that the said *Darnall,* on the 10th of May 1805,
executed and acknowledged a deed of manumission, whereby the petitioners were manumitted from slavery. That
*Darnall* died soon after the execution of this deed, and that
it has been omitted to be recorded within the time prescribed by law, without any fraudulent design or intention
in any person whatever. *Prayer,* that such notice be given
to the *heirs and devisees* of *Darnall* as may be necessary,
and that the deed may be recorded by decree of the court
of chancery. On this petition an order of publication issued against the *heirs and devisees* of *Darnall. John Wicks,*

<div style="text-align:right margin">The chancellor has no authority to decree a deed of manumission to be recorded, where it has not been enrolled within the time prescribed by law.</div>

1819.

Wicks
vs
Chew

*Henry Darnall,* and *Henry Holland,* claiming to hold the petitioners in slavery, appeared and filed their petition, stating that the petition filed by *Chew* and others ought to be dismissed—1. Because the law of the land does not authorise slaves, either in person or by their next friend, to institute any proceedings in chancery. 2. Because the court has no power to decree that deeds of manumission be recorded after the expiration of the time within which the law directs them to be recorded. 3. Because the deed was never perfected by delivery, either to the petitioners, or to any person for their use, and *Darnall* was not bound in law to execute the same.

KILTY, Chancellor, (February 18th, 1817.) The act of assembly under which the publication is made, does not direct in what manner the defence, if any, in consequence of the notice, is to be conducted. In some of the objections by *Wicks* and others, facts are stated which do not appear by the petition filed by *Chew* and others; but being only alleged in the petition filed by *Wicks* and others, they cannot be taken to be true as in an answer. The parties may take measures for having the facts that may be thought material, before the court. *George Medkiff,* and *Dorothy* his wife, she being one of the heirs of *Richard Darnall,* appeared in February term 1817, and by their answer admitted the execution and acknowledgment of the deed of manumission, and that it was unrecorded until the 19th of May 1814; that the petitioners are slaves, and cannot bring any action in equity either by next friend or solicitor, or in person; that if the deed was decreed to be recorded, such decree would work a manifest injustice, as all the property which came to these respondents, and the other heirs and devisees of *Richard Darnall,* as the children of *Francis Darnall,* had been divided, and much the greater part of the petitioners have, on the division of the personal property, fallen to these respondents; that after the execution and acknowledgment of the deed of manumission, *Richard Darnall,* (as the respondents were informed and believed,) altered his mind with respect to the petitioners, and determined not to liberate them; which was the reason that he did not have the deed recorded in due time. That *Richard Darnall* died on the 25th of December 1807.

KILTY, Chancellor, (July Term 1817.) It is the first instance, I believe, of an application to record a deed of this kind, but I am nevertheless of opinion that it ought to be granted. It was made under the act of 1792, *ch.* 41, the course of proceeding under which was remarked on in the order of February 18th, 1817. No measures have been since taken for having the facts before the court, and the defence has been made on the construction of the law. The words of the act are general—"any deed to the validity of which recording is necessary." It speaks of land or other *thing* conveyed; and the original act on the same sub-

ject, (1785, *ch.* 72,) spoke of the *thing* or premises. The act of 1785 prescribes no time for the recording; that of 1792 adopts the time within which the deed ought to have been recorded. The act of 1796, *ch.* 67, directs that deeds of manumission shall be recorded within six months; though it is not so strong in its expressions as the act of 1715, *ch.* 47, which directs that no land, &c. shall pass by bargain and sale only, unless the deed be acknowledged and enrolled within six months. The recording, however, has been considered so necessary under the act of 1796, that after the six months, a claim to freedom under a deed could not be maintained without it. But I apprehend that the former slave would have a right to freedom from the delivery of the deed for nearly six months, the subject to be divested by his neglect to have it recorded within the limited time. It was urged that the deed of manumission conveyed nothing. But a right may be conveyed or granted as well as property, and the words of the act are that the person possessing a slave may, by writing, &c. grant him his freedom.

As to the right of the parties to bring this suit which has been questioned. I consider their possession of the deed to which they were parties, sufficient for such a suit, the next friend being answerable for costs. The grantor, *Richard Darnall,* gave them a power to perfect the deed by recording. They neglected to use that power. But if the law extends a remedy to any and every deed, it must allow the right of application for that remedy to any grantee therein named. Although the neglect to record the deed divested the right which might have been perfected by the grantee, it may be revived by the provision made for recording; as the right to maintain an action of ejectment might be lost and recovered. I lay out of the case the length of time between the date of the deed, and that of the petition for recording, and the allegation of the grantor altering his mind, of which there is no evidence; and it is then the ordinary case of a deed being unrecorded, without any fraudulent intention of the party claiming under it, which is indeed always presumed to be the case unless the contrary is made to appear.

It is the practice also on publication, to decree the recording of papers purporting to be deeds acknowledged, without requiring proof of the actual execution. The publication is certified to the court in the usual way.

The interest in the persons of the petitioners, considered as property, which is set up by some of the heirs, is not such as is provided for by the acts on the subject—*Decreed,* that the deed of manumission, filed with the petition, from *Richard Darnall* to negroes *Araminta,* &c. bearing date on the 10th of May 1805, be recorded or entered among the records of the county court of *Anne-Arundel* county, where the grantor *Richard Darnall* did reside; the said recording to be within six months from the 28th of July 1817, the date of this decree. Provided, &c. in the words of the

1819.

Wicks
vs
Chew

*fifth section* of the act of 1792, *ch.* 41.   From this decree the defendants appealed to this court.

The cause was argued before Buchanan, Earle, Johnson and Dorsey, J.

*Magruder, Stephen* and *Boyle,* for the Appellants, contended, 1.  It is not alleged in the petition, nor does it appear, that the petitioners are under 45 years of age, and of healthy constitutions and capable by labour to procure sufficient food and raiment, &c.   2.  Slaves cannot be petitioners in chancery by next friend or in person.   3.  The court of chancery has no power to decree the recording of any instrument of manumission.   4.  The original proceedings in chancery are erroneous, there being no persons named as defendants; and 5.  An order of publication cannot go except against nonresidents, or persons alleged to be so.   They referred to the acts of 1796, *ch.* 67, *s* 29; 1785, *ch.* 72, *s* 11; 1791, *ch.* 79; and 1792, *ch.* 41, *s* 3; and *Negro James vs. Gaither,* 2 *Harr. & Johns.* 176.

*Brewer,* for the Appellees.

Buchanan, J. delivered the opinion of the court.   This case comes up on an appeal from a decree of the chancellor, ordering a paper executed by *Richard Darnall,* purporting to be a deed of manumission to the petitioners, to be recorded.   By the act of 1796, *ch.* 67, *s.* 29, deeds of manumission are required to be recorded "within six months after the date," without which they are of no validity in law.   The instrument of writing which is sought to be recorded, bears date the 10th of May, in the year 1805, and was recorded on the 19th of May 1814, something more than nine years after the date, and can have no effect or operation without the interposition of chancery.   By the act of 1785, *ch.* 72, *s.* 11, "for enlarging the power of the high court of chancery," it is provided, "that in case any deed hath been or shall hereafter be executed, to the validity of which recording is necessary by law, and such deed hath not been, or shall not be recorded agreeably to law, without any fraudulent design or intention of the party claiming under such deed, that the chancellor shall have full power and authority, upon application of the party claiming under such deed, and summoning and hearing the party making such deed, his heir, devisee, executor or administrator, as the case may require, and being satisfied that the party claiming under such deed has a fair and equitable claim to *the premises* therein mentioned, to order and decree that such deed shall be recorded; and when such deed is recorded, it shall, in pursuance of such decree, be taken and considered in all courts of law and equity against the party making such deed, his heirs, devisees, executors and administrators, in the same state, and to have the same effects and consequences, to all intents

and purposes, as if such deed had been recorded within the time prescribed by law; but such deed shall not destroy, or in any manner affect the title of any purchaser of the same *thing or premises*," &c. And by the supplement of 1792, *ch.* 41, *s.* 3, directing the mode of proceeding against nonresidents, it is enacted, "that in case any deed hath been, or hereafter shall be executed, to the validity of which deed recording is necessary, and such deed hath not been, or shall not be recorded agreeably to law, without any fraudulent intention of the party claiming under the same, the chancellor, upon petition of the party to whom the said deed was executed, or of his, her, or their legal representatives, or of any of them, claiming the *land,* or *other thing conveyed*, or *intended to be conveyed*, by such deed, and without the appearance or hearing of the defendant or defendants, shall have power to decree the recording of the said deed," &c. Upon these acts of assembly the proceedings in this case are founded; and the chancellor, in his decree, supposes his authority to order the paper in question to be recorded, to be derived from them. And the question now to be decided is, whether the chancellor has the power to order such a paper to be recorded? The acts of assembly referred to are not intended to give relief in cases which were before without remedy, but to give an additional remedy, by enabling a party acquiring equitable rights, under a deed not operative in law for want of recording, to perfect those rights, by applying to the chancellor to order the original instrument to be recorded, and thus to give it the effect which by law it would have had, if recorded in due time, instead of going into chancery to enforce a specific performance, or compel a conveyance. They are intended to give an accumulative remedy to persons able to contract, and who by deed acquire rights which equity will protect, with the power to prosecute those rights. But by the laws of this state, a negro, so long as he is a slave, can have no rights adverse to those of his master; he can neither sue, nor be sued, nor can he make any contract, or acquire any rights under a deed, which either a court of law or of equity can enforce. And as it is the recording of a deed of manumission within the time prescribed by law, which entitles him to his freedom, he continues a slave, and can acquire no rights under such an instrument, until it is so recorded, and consequently cannot go either into a court of law or equity for relief of any kind. And as the acts of assembly only authorise the recording of a deed, on the application of the party claiming under it, and on the chancellor being satisfied that such party has a fair and equitable claim *to the premises therein mentioned*, they must be understood to relate alone to deeds creating claims, and to persons capable of acquiring and of prosecuting such claims, and cannot be construed to embrace the case of a deed of manumission, by which no right or claim can be created until it is recorded, and the object of which, while

he continues in a state of slavery, is incapable of suing either in a court of law or equity. A master may execute and acknowledge a deed of manumission, and afterwards destroy it, or keep it, and refuse to have it recorded, and the slave remains a slave without redress. Besides, the original act of 1785 speaks of the *thing or premises* mentioned in the deed, and the language of the supplement of 1792, is "the *land* or *thing* conveyed or intended to be conveyed," by which it is obvious that they only contemplate deeds having relation to *property*.

It is therefore the opinion of this court, that the chancellor has erred in his construction of the acts of assembly.

DECREE REVERSED.