PANNELL & SMITH *vs.* THE FARMERS' BANK of MARYLAND,
*et al.*—June, 1826.

On a bill praying a decree for the sale of mortgaged property for the pay-
ment of the mortgage debt, where the mortgage was not recorded in
time—*Held* by *Johnson*, Chancellor, that in the distribution of the pro-
ceeds of sale, the mortgagees were not entitled to a preference over the
creditors of the mortgagor, who became such subsequent to the date of
the mortgage; but that they were so entitled in relation to prior credi-
tors—*Held* further, that although this priority of the mortgagees did not
extend to the subsequent debts of the mortgagor, yet that the mortga-
gees, being entitled to priority over previous debts, they were entitled
to the benefit of those debts in the distribution of the proceeds of sale,
so as to reduce the proportion of subsequent creditors to what it would
have been if the previous debts had been fully allowed.

On an appeal by some of the creditors of the mortgagor, the appeal was
dismissed, because there was no proof of their debts.

APPEAL from the Court of Chancery.   The bill in this case,
which was filed by *The President, Directors and Company*,
*of the Farmers' Bank of Maryland, Robert H. Goldsbo-*
*rough*, and *Alexander C. Magruder*, against *Priscilla Han-*
*son*, administratrix of *Alexander C. Hanson*, together with a
statement of the case, appear in the following decree made by

JOHNSON, Chancellor, (March Term 1823.) *Alexander C. Hanson,* the intestate, desirous to obtain an accommodation at the *Farmers' Bank of Maryland,* with a view of procuring money to meet some pressing demands on him, applied to *Robert H. Goldsborough* and *Alexander C. Magruder,* to endorse a note for him for $3,000, to be discounted at the said bank, and for their indemnity promised to execute a mortgage. On this promise they were induced to become his endorsers, and the note for that sum was accordingly endorsed and discounted, and the money received by *Hanson,* the drawer. In pursuance of his promise, on the 20th of November 1818, a mortgage was executed by *Hanson* of certain personal property to indemnify *Goldsborough* and *Magruder,* and save them harmless as endorsers. The note has since been protested for nonpayment, and still remains unpaid. *Hanson* is dead, intestate, and without leaving property sufficient to pay the debts he owed at the time of his death. The complainants, in virtue of the mortgage, claim a preference over the creditors, and demand the application of the funds arising from the mortgaged premises to the payment of the note, to the utter exclusion of the other creditors.

The answer of the administratrix states the deficiency of the assets, and submits to the decision of the court, whether the complainants are entitled to the preference.

By a decree of the 2d of January 1822, the premises were ordered to be sold, and the trustee was directed to give notice to the creditors of the deceased to exhibit their claims; this has been done, and from the amount of the debts, and the proceeds of sales, it clearly appears, that the estate of the deceased was insufficient and inadequate to the discharge of the debts. The mortgage, without any fraudulent design, was omitted to be recorded. The questions arising in the cause are, whether or not the complainants are entitled to a preference, and to what extent?

The auditor, under the interlocutory decree passed in the case, and in pursuance of the directions of the decree, has returned two accounts, in the one applying all the proceeds to the complainants' debt, leaving, after the entire application, a considerable balance still due; in the other account the proceeds

are applied equally, and of course greatly increasing the balance.

This case has been submitted on a few remarks, on the part of the complainants, and by them the court is referred to the case of *Woods et al. vs. Fulton & Starck,* 4 *Harr & Johns.* 329, as an authority conclusive in favour of the preference. In the argument of that case, a claim to a preference on the part of the mortgagee, (whose mortgage was not recorded,) was claimed over other creditors; and authorities were cited to prove, that a creditor, who had become such in consequence of a previous promise of a mortgage to secure his debt, did in the court of chancery in *England* obtain a preference over general creditors. But I am at a loss to reconcile that adjudication with the favoured and equitable *principle,* that all the funds of a debtor ought equally to be applied to discharge his debts, and if deficient, that each of the creditors should bear a proportionable share of the loss—the rule invariably pursued by a court of equity when the funds to discharge debts are equitable assets. When one creditor has obtained a legal advantage, either in obtaining a judgment, or in procuring a mortgage, there as he has as much equity to have his debt paid as other creditors, having the law in his favour, he will prevail, for the equity being equal, the legal right preponderates.

But, except for the respectable authorities produced at the trial of the case of *Woods & others vs. Fulton & Starck,* I should have concluded, that a promise either verbal, or in writing, would not in equity entitle the creditor, to whom it was made, to a preference, to the exclusion of the other creditors. I should have drawn a distinction between enforcing *contracts* of sale, from *contracts to give a mortgage.* In the former, if the purchase money was paid during the life of the vendor, it constituted a fund for the discharge of his debts; if not paid, before a conveyance would be decreed to be made, the purchase money must be paid; of course, the enforcement of such contracts is only changing the nature of the funds, not diminishing of them injuriously to the interest of the creditors. But to give to him, who has only a contract for a mortgage, a preference over other creditors, so far as his claim extended, the funds are reduced, or may be totally destroyed as to the other

creditors. I should have concluded, but for such authorities, that a court of equity would have said to him who claimed a preference under such a contract, you have no legal advantage over the general creditors, and therefore, if a loss is to be sus-- tained on account of the deficiency of assets, you must with them bear your proportion.

In the opinion pronounced by the court of appeals, they carefully avoid sanctioning the doctrine of the authorities cited on that occasion; for in the opinion it is observed—"As the an- swers do not state the insufficiency of the estate of *Dennison,* to satisfy his creditors, or the insolvency of the firm of *Denni- son & Savin,* (and to these points there is no proof in the cause,) the question of fraud, in reference to creditors, does not arise in the cause;" and "this view of the case renders it unnecessa- ry for the court to decide on the true construction of the statute referred to, or to give any opinion on the question how far the defendant could call to his aid the provisions of the said statute, in a case where the complainant does not seek to record his mortgage, but claims relief under that branch of equitable ju- risdiction which enforces contracts made *bona fide,* and for a valuable consideration."

The statute referred to in the above extract from the opinion of the court, is the act of 1785, *ch.* 72, *s.* 11; by this law it is enacted, "that in case any deed hath been, or shall hereaf- ter be executed, to the validity of which recording is necessa- ry by law, and such deed hath not been, or shall not be record- ed agreeably to law, without any fraudulent design or intention of the party claiming under such deed," power and authority is given to have it recorded, under a decree of the court, and it is to have the same effect as if it had been duly recorded with- in the time prescribed; subject, however, to a proviso in the act, which among other restrictions, *is that it shall not in any manner affect the creditors of the party making such deed,* who may trust such party *after the date* of the said deed.

In the case now under consideration the complainants, it is true, do not apply to have the mortgage recorded, to the legal validity of which recording is necessary; but claim the benefit of the mortgage on the ground of a *bona fide* contract, to the exclusion of the other creditors of the mortgagor, who trusted him *after the date* of the mortgage deed.

If the party omitting to record the deed, can, by changing the *form* of the application to this court, exclude the beneficial parts of the act of 1785, *ch.* 72, *s.* 11, designed to secure subsequent purchasers and subsequent creditors, the law is made effectual to the exclusion of those provided for in the proviso, then whenever the estate of the mortgagor is insolvent, the application, founded on an unrecorded deed of mortgage, will be, to have the property sold, not for the deed to be recorded; and where can be the substantial difference between making the deed effectual against all persons by its being recorded under a decree, and selling both the legal and equitable interest in the mortgaged premises to a third person, and applying the whole proceeds to the discharge of the mortgaged debt? In reason there can be no difference; and therefore, my opinion is, that inasmuch as the creditors, who became such *after* the date of the mortgage, would not be excluded by its being recorded under a decree, so are they not deprived of a proportion of the money arising from the sale of the premises made in virtue of a decree.

It remains to be considered how the proceeds are to be distributed. On examining the statement of the auditor, and the vouchers of the creditors on which the statement is predicated, only one claim is presented that arose *subsequent* to the date of the mortgage; and as the mortgage, if recorded under a decree of the court, would have been, under the act of assembly, effectual against all *prior* creditors, so it appears to me, are they by the true construction of the act, excluded from the proceeds arising from the sale of the mortgaged premises. If the mortgage had not been executed, then the assets would have been divided amongst the creditors equally, and of course, the claim of *Edward Pannell*, could only on the distribution have entitled him to the dividend he is allowed in the report of the auditor. If his dividend was to be increased, in consequence of the claims prior to the mortgage being rejected, that would be extending to him the benefit of the mortgage; but he is not entitled to that benefit, it is solely and exclusively the privilege of the mortgagees; and therefore they, by the mortgage overreaching the prior creditors, have the benefit of those claims, to keep down *Pannell's* dividend, and to confine it to the same sum he

would have been entitled to draw had the claims prior to the mortgage been taken into the dividend. The exceptions taken on the part of the complainants, to the report of the auditor, except so far as they relate to that part of the account returned with the report, applicable to the claim of *Edward Pannell*, be and the same are ruled good; and the proceeds, after the commission and costs are paid, are directed to be paid as follows: To *Edward Pannell*, the sum stated as his proportion, and the residue to *The President, Directors and Company, of the Farmers' Bank of Maryland*, in part of the note in the proceedings mentioned, that was discounted at the bank, and endorsed by the other complainants. From this decree *Edward Pannell*, and *Dennis A. Smith*, another creditor, appealed to this court.

The cause was argued before BUCHANAN, Ch. J. and EARLE, STEPHEN, ARCHER, and DORSEY, J.

*Taney* and *Gill*, for the Appellants, contended—1. The Bank has no remedy against *Magruder* and *Goldsborough* but at law and on the note. The bill does not state facts sufficient to enable the bank to recover of *Magruder* and *Goldsborough* either at law or equity.

2. The complainants, *Magruder* and *Goldsborough*, have not been damnified by their security for *Hanson*. They do not show in the bill any liability on that securityship, and consequently have no present right to claim the proceeds of the mortgaged slaves, or any part thereof.

3. The bank, as a creditor of *Hanson*, has no right to call on his securities in equity, without showing a case in which *Hanson's* estate is liable to such sureties.

4. The bank cannot claim to avail themselves of the contract of indemnity between *Hanson* and his sureties, unless they show, (which they have not done,) that the sureties are liable for *Hanson*.

5. The principal creditor cannot claim, (on the principle of substitution,) to enforce an indemnity which his debtor has given to a mere surety; and no such right results from the contract on the discounted note.

6. The mortgage here is void, because there is no proof, nor

does it in any manner appear, that the property mortgaged was delivered to the mortgagees—the mortgage not being acknowledged and recorded.

7. In the bill, the bank, having no interest, was improperly made a party. The complainants, to succeed, must show an interest in all of them.

They cited 1 *Evans' Pothier*, 245, 252. *Kaimes Prin. Equity*, 84. *French vs. Bank of Columbia*, 4 *Cranch*, 141, 153. *Corney vs. Da Costa*, 1 *Esp. Rep.* 302. 1 *Chitty on Bills*, 262, 263, (Ed. 1818.) *Brown vs. Maffey*, 15 *East*, 216. Acts of 1729, *ch.* 8, *s.* 5; and 1785, *ch.* 72, *s.* 11. *Dorsey vs. Smithson*, 6 *Harr. & Johns.* 64. *East India Company vs. Henchman*, 1 *Ves. jr.* 287. *Wesley vs. Thomas*, 6 *Harr. & Johns.* 28.

*Magruder*, for the Appellees, cited 1 *Eq. Ca. Ab.* 93, (K.) pl. 5. 1 *Bro. Civil Law*, 162. *Parsons vs. Briddock*, 2 *Vern.* 608. *Wright vs. St. Alban*, 11 *Ves.* 22. Act of 1804, *ch.* 61, *s.* 26. *Dorsey vs. Smithson*, 6 *Harr. & Johns.* 63, 64. *Woods, et al. vs. Fulton & Starck*, 4 *Harr. & Johns.* 329.

THE COURT dismissed the appeal, there being no proof in the record of the claims of the appellants.

APPEAL DISMISSED.