The Sixth Ward Building Association, No. 5, *vs.* John William Willson, and others.

*Registry Laws—Defective or unrecorded Mortgages—Trusts for the Benefit of Creditors—Parties in Equity.*

Under the registry laws of Maryland a mortgage not recorded within six months from its date, is entitled to priority only over creditors who were such at its date.

The rights of subsequent creditors against defective or unrecorded mortgages will be protected, as well where the claim under such instruments is asserted in a Court of Equity, as in a Court of Law.

A deed of trust for the benefit of creditors, unless in fraud of their rights by hindering and delaying them in the collection of their debts, is valid, and binding upon the general unsecured creditors of the grantor.

A trustee for the benefit of creditors so far represents their rights as to enable him to contest, for their benefit, the claim of a mortgagee under a defective mortgage to a preference in the distribution of the proceeds.

Where a party claiming under defective mortgages had filed a bill to enjoin a trustee for the benefit of creditors from selling the mortgaged property, but subsequently it was agreed that the trustee should proceed with the sale; and that such sale should pass the title of all the parties to the suit; and that the proceeds should be brought into Court to be substituted in place of the property and to await final decree; and that the cause should be referred to the auditor to state an account distributing the fund, and to take testimony, it was Held:

That the creditors were not necessary parties.

Appeal from the Circuit Court of Baltimore City.

This appeal is taken from the decree of the Court below dismissing the bill of the complainant. The case is stated in the opinion of this Court.

The cause was argued before Bartol, C. J., Stewart, Brent, Grason, Miller, Alvey and Robinson, J.

*Orlando F. Bump*, for the appellant.

In this case it is not necessary that the mortgages shall be valid as deeds. It is sufficient if they are valid as contracts, for this is a bill in equity to enforce the mortgages. *Code, Art.* 16, *sec.* 23; *Act of* 1868, *ch.* 325.

A deed defectively acknowledged, constitutes an equitable contract that may be enforced. *Price vs. McDonald*, 1 *Md.*, 414; *Johns vs. Scott*, 5 *Md.*, 81. A mistake in an acknowledgment may be corrected in Chancery. *Simpson vs. Montgomery*, 25 *Ark.*, 365. A mortgage defectively executed through the omission of the affidavit, may be enforced. *Phillips vs. Pearson*, 27 *Md.*, 242; *Johnston vs. Canby*, 29 *Md.*, 211.

The next question is whether the mortgages can be enforced against a trustee claiming under an assignment for the benefit of creditors.

A fraudulent deed is void as against creditors; nevertheless creditors have no higher rights against the property covered by it than against any other property of the debtor. Hence they can only take it on execution. *Owen vs. Dixon*, 17 *Conn.*, 492; *Wanamaker vs. Bowes*, 36 *Md.*, 42. An unrecorded deed, like a fraudulent deed, is valid between the parties but void as to creditors.

It is only *judgment creditors* who can take advantage of the omission to record a deed. *Chester vs. Greer*, 5 *Humph.*, 26; *Underwood vs. Ogden*, 6 *B. Mon.*, 606; *Thompson vs. Van Vetchen*, 27 *N. Y.*, 568.

It is conceded that an unrecorded deed is binding on the grantor. He cannot therefore confer a right upon any one else to impeach it. *Winsor vs. McLellan*, 2 *Story*, 492; *Mellon's Appeal*, 32 *Penn.*, 121; *Gibson vs. Warden*, 14 *Wall.*, 244.

It is settled law that the title of the trustee is subject to all equities. *Ratcliffe vs. Sangston*, 18 *Md.*, 383; *Foley vs. Bitter*, 34 *Md.*, 646.

It follows from this that a trustee is not a purchaser for value under the recording Acts. In fact the trustee is not a purchaser at all. He is merely an agent selected by the debtor to convert the property into cash and distribute it among the creditors.

Transfer of property merely as a new security for an antecedent debt, without an extinguishment or surrender of the debt, does not constitute the grantee a purchaser for value. *Morse vs. Godfrey*, 3 *Story*, 364.

The recording Acts were not intended to interfere with the jurisdiction of Courts of Equity to enforce equitable contracts. A contract for a mortgage is an equity that may be enforced against a trustee. *Alexander vs. Ghiselin*, 5 *Gill*, 185.

The Court below at the hearing raised the question, *sua sponte*, that there were not proper parties to the suit, and dismissed the bill on that ground. The point was not taken by demurrer or in the answer. Under such circumstances the bill will not be dismissed if a decree can be passed which will not prejudicially affect the rights of the absent parties. *Story vs. Livingston*, 13 *Pet.*, 359 ; *Trustees vs. Cowen*, 4 *Paige*, 510 ; *Page vs. Olcott*, 28 *Vt.*, 465; *Whiting vs. Bank*, 13 *Pet.*, 6 ; *Story's Eq. Pleadings, secs.* 229, 542.

In this case the defendants are precluded from raising the objection by their agreements.

So far as the subsequent creditors claim as *cestuis que trust* they are not necessary parties. The trustee, like an administrator, or an executor, represents their rights. *Story's Eq. Pleadings, secs.* 149, 215, 216.

*John Wm. Willson* and *Edward Duffy,* for the appellees.

The want of the affidavit to a mortgage is fatal to the validity of the mortgage, whether the mortgage be assailed by a creditor or subsequent *bona fide* purchaser. *Cockey vs. Milne's Lessee,* 16 *Md.*, 200 ; *Denton vs. Griffith*, 17

*Md.*, 301; *Phillips vs. Pearson*, 27 *Md.*, 243; *Nelson vs. Hagerstown Bank, &c.*, 27 *Md.*, 73; *Busey vs. Reese*, 38 *Md.*, 268.

Under any circumstances all the mortgages are void as against subsequent creditors. *Sprigg vs. Lyles*, 2 *G. & J.*, 446; *Pannell, &c. vs. The Farmers' Bank*, 7 *H. & J.*, 206; *Gill vs. Griffith*, 2 *Md., Ch. Dec.*, 270; *Nelson vs. Hag. Bank*, 27 *Md.*, 73.

The assignee represents the creditors and therefore can make the above objections in their behalf. *Story's Eq. Pl.* secs. 94, 101, 149, 157, 158 *and note.*

But if he does not represent the creditors, then the complainant should be required to amend or have his bill dismissed. *Story's Eq. Pl. secs.* 236, 236 *a.*

MILLER, J., delivered the opinion of the Court.

It appears from this record that Benjamin Price and William G. Price executed seven mortgages of leasehold property to the appellant. Three of them purport on their face to have been executed and acknowledged on the 20th of January, 1872, with the proper affidavits of the mortgagee, but they were not recorded until the 4th of January, 1873. The other four purport to have been executed on the 13th of September, 1872, but no affidavits were made to them and the acknowledgments were not complete in form nor signed by the magistrate. In this condition they were recorded, also on the 4th of January, 1873, but the mortgagee subsequently withdrew them from record, made the affidavits to them and procured the certificates of acknowledgment to be perfected by the magistrate, and had them again recorded on the 18th of January, 1873. On the 3rd of January, 1873, the day before either of these instruments were recorded, the Prices executed a deed of trust of all their property to Willson, with power to sell the same and divide the proceeds amongst all their creditors, and this deed was recorded on the day of its date.

The trustee proceeded to advertise the property embraced in these mortgages for sale, the advertisement stating the sale would be made under and by virtue of this deed of trust. The appellant, then on the 23rd of January, 1873, filed its bill against the trustee and the Prices, for an injunction to restrain this sale, and praying that the defendants may be compelled to execute such papers as may be necessary to perfect the complainant's title under these seven mortgages, and that the mortgagee may be declared to have priority and preference over the deed of trust and for general relief. After the injunction had been granted, the trustee and the two Prices filed their answers in which they severally insist upon the invalidity of all these mortgages, and aver that the three first mentioned were executed and delivered in November, 1871, and that the dates in them and in the certificates of acknowledgment have been fraudulently altered to their present form, and that the four last mentioned were executed and delivered about the 12th of March, 1872, and that the dates now appearing in them were also inserted long after their delivery to the complainant; and they further aver that all of them are inoperative and void as against the creditors of the grantors in the deed of trust, and that in respect thereto, the Building Association, the mortgagee, stands only in the position of an ordinary unsecured creditor.

The parties then entered into an agreement, that the trustee should proceed to sell under his advertisement, and that such sale should pass to the purchaser all the title of all the parties to this suit, and that the proceeds after payment of expenses shall be brought into Court to be substituted in the place and stead of the property, and to await final decree and distribution, the rights of all the parties to the suit being transferred from the property to the proceeds, and all the parties to have the same rights against the proceeds that they might have against the property. Upon this the trustee proceeded to sell and re-

ported his sale to the Court, and the auditor thereupon stated an account showing that the net proceeds, after paying expenses and a prior mortgage which the parties agreed should be deducted therefrom, amounted to $1178.28, and this sum was deposited in Court in pursuance of the agreement above stated. The cause was then referred to the auditor under another agreement to state an account distributing this fund, and to take testimony, and that the cause shall be determined on the pleadings and testimony so taken and the account or accounts so stated, the parties to have the right to except to the testimony and accounts in the same manner as if the same had been taken and stated in the usual course. Under this agreement the auditor took testimony relating mainly to the alteration of the dates of the mortgages, and then stated two accounts, one awarding the fund to the trustee to be distributed under the deed of trust, and the other to the mortgagee, but recommended the adoption of the former.

As to the question of fact thus presented, we are of opinion upon a careful examination of the testimony that it fails to establish such a fraudulent alteration of the dates as to render the mortgages void for that reason. In this we agree with the appellant's solicitor, but the other positions which he has taken and argued with much zeal and ability, we cannot sustain. One of his main positions is that the trustee is not only not a purchaser for value, but stands simply in the place of the grantors and in no wise represents the rights of their general creditors. He treats the case as one entirely between the mortgagee and the mortgagors, as between whom he insists the former is entitled in equity to have the mortgages enforced as valid contracts and the fund applied to their payment, irrespective of the rights of creditors to enforce their claims against the property in the hands of the purchaser. He concedes, if this position be sustained, the purchaser may be placed

in the predicament of holding the property liable to the enforcement against it of the claims of these creditors by attachment or by execution on judgments which they may obtain against the grantors, but insists the purchaser must take care of himself as he purchased only the title of the parties to the suit. A Court of Equity, however, will not allow purchasers to be placed in such a condition when it can be prevented. That the purchaser here had every reason to suppose he was acquiring an unencumbered title, free not only of all claims under these mortgages, but also of all claims of the creditors of the mortgagors, there can be no doubt. By the agreement under which the sale was made it was stipulated the title of the mortgagee should be sold as well as that of the mortgagors and trustee, and that the proceeds of sale should stand in the place of the property. That agreement, with the one under which the case was referred to the auditor, would go a great way to prevent the appellant from asserting in this case, the position it now seeks to sustain, even if it were otherwise maintainable, and to dispense with the necessity of having the creditors called in and made parties to the proceedings. But apart from this, it is clear that a deed of trust for the benefit of creditors, unless in fraud of their rights by hindering and delaying them in the collection of their debts (as the one before us clearly is not) is valid and binding upon the general unsecured creditors of the grantor. They cannot impeach it and must come in and take their dividends under it. Our statute law morever takes hold of such deeds and requires the trustees to give bonds conditioned for the faithful execution of their trusts, and if a trustee fails to do this the Court may appoint one in his place, in which case " the whole trust estate shall vest in" the trustee so appointed subject to the provisions of the trust deed. *Code Art.* 81, *secs.* 116 to 120 ; and *Act of* 1870, *ch.* 370. It has been usual for such trustees to report sasle and administer their trusts under the direction of

the Courts, and they are now required to make report of their sales by the Act of 1874, ch. 483, sec. 111, which provides "that any sale made by such trustee, before taking effect, shall be reported to and ratified by said Court." And by the Act of 1870, ch. 370, no sale "shall be valid unless the same shall be confirmed by the Court as in case of sales made by trustees appointed by the Court." If then a trustee has sold under a valid deed of this description, and that sale passes the property to the purchaser free from all rights of creditors ever afterwards to pursue it in his hands, how can it be said the trustee does not represent those rights so far as to enable him to contest for the benefit of his *cestuis que trust,* the claim of a mortgagee under defective mortgages to a preference in the distribution of the proceeds? We see no reason why he does not, and, under the agreements referred to and the proceedings in the cause, we are of opinion it is to be treated as a case where the trustee has regularly sold the property and reported his sale to the Court, and the appellant comes in and asserts as against the proceeds a preference over the creditors of the grantors.

Assuming, therefore, the appellant is rightfully in a Court of Equity and there asking that these defective mortgages may be enforced as valid contracts for conveyances, and that such relief can be granted in this proceeding, how stands the case? The mortgages are defective under the Registry Laws, some in not having the requisite affidavit of the mortgagee and others in not being recorded in time. The proof shows who were the creditors of the mortgagors, and that a large majority of them both in numbers and amount became such *after* the execution of all these instruments. It is not a case where a priority is claimed for an unrecorded or defective mortgage over a subsequent encumbrancer *with notice,* nor where such a mortgage or a contract for a specific lien is sought to be enforced simply against *existing* creditors. It does

33            v. 41.

not therefore fall within the decisions in *Phillips vs.* *Pearson,* 27 *Md.,* 242 ; *Johnston vs. Canby,* 29 *Md.,* 211 ; and *Carson & Vickery vs. Phelps,* 40 *Md.,* 73, nor within the principles which those cases recognize. Here the rights of *subsequent* creditors (that is those who became such after the execution of the instruments) are sought to be affected, and in our opinion, their rights in this respect are protected by the Registry Laws. These laws provide that every mortgage conveying any use, estate or interest in land, shall be recorded within six months from its date, and no estate passes by it unless so recorded, and that no mortgage shall be valid except as between the parties thereto unless it has endorsed thereon the prescribed affidavit of the mortgagee. *Code, Art.* 24, *secs.* 1, 13, 28, 29. Mortgages are expressly excepted from the operation of sec. 19, which allows any deed to be recorded at any time after six months, and makes it valid against the grantor, purchasers with notice, and all creditors of the grantor who may become so after its recording. This does not allow the recording of a mortgage after the six months, but under sec. 23 of Art. 16, a Court of Equity may upon a proper case being made, decree it to be recorded, but when so recorded, it is expressly provided it shall not *" in any manner* affect the creditors of the party making such deed who may trust such party *after the date of said deed."* The effect of these provisions must be to protect the rights of *such creditors* against a defective or unrecorded mortgage as well where the claim under such an instrument is asserted in a Court of Equity as in a Court of Law. If they do not they might as well be wholly disregarded and obliterated from the statute book. That this Court has repeatedly construed and regarded these laws as having that effect, we refer, among other decisions, to *General Ins. Co. vs. United States Ins. Co.,* 10 *Md.,* 524 ; *Cockey vs. Milne,* 16 *Md.,* 207 ; *Denton and Wife vs. Griffith,* 17 *Md.,* 304, and *Nelson vs. Hagerstown Bank,*

27 *Md.*, 73. The result of these views is that the only preference to which these mortgages are entitled is over creditors who were such at their respective dates, and as to creditors who became such subsequently, they must take their *pro rata* share under the deed of trust, and the fund in Court must be distributed accordingly.

The learned Judge of the Circuit Court whilst taking substantially the same views of the case, was yet of opinion the creditors should be made parties to the proceedings, and because the complainant declined to amend its bill for that purpose, passed a decree dismissing the same without prejudice. But whatever may be the general rule as to parties in such cases, we are of opinion, as already intimated, that under the agreements and proceedings in this case no such amendment was necessary. This decree will therefore be reversed, and the cause remanded in order that distribution of the fund may be made in accordance with the views expressed in this opinion.

*Decree reversed, and*
*cause remanded.*