JOSEPH DYSON, ANN BYRD and others *vs.* CHARLES
S. SIMMONS.

*Equitable mortgage—Enforcement in Equity of a Defective
mortgage—Judgment lien—Sec. 23, of Art. 16, of the Code,
as applicable to this case—Rights of Judgment creditors as
among themselves, and as to claim of Mortgagee—Mode of
distribution of Proceeds of sale of Real estate as between
Judgment creditors and Mortgagee—Where a deed of Trust
could not be set-up as against a Mortgage.*

A party residing in Montgomery county, with his wife, executed and acknow-
ledged before a justice of the peace of Frederick county, a mortgage on
land situated in the former county, and the consideration was sworn to by
the mortgagee. The mortgage was filed for record within the time pre-
scribed by law, and actually recorded in Montgomery county; but the
acknowledgment and affidavit having been made before a justice of the
peace in Frederick county, there was an omission to obtain the clerk's
certificate of the official character and qualification of the justice as
required by Art. 24, sec. 3, of the Code. The mortgagor, the husband,
was largely indebted on contracts made before and after the date of the
mortgage, upon which a large number of judgments were recovered subse-
quent to that date. The husband subsequent to the date of the mortgage,
to secure a debt due his wife long before the date of the mortgage, executed
to his son a deed of trust of the same land embraced in the mortgage. A
bill was filed by the assignee of the mortgagee to enforce the mortgage,
thus ineffectually recorded, upon the footing of a contract, and as an
equitable charge upon the land embraced in it. This was resisted by the
judgment creditors, upon the ground that their judgments had created liens
upon the land, and that such liens could not be displaced or interfered with
by a prior unrecorded or equitable mortgage. The land was sold and the
fund realized from the sale was largely insufficient to pay all the judgments
and the mortgage beside. HELD:

1st. That it is a principle well settled, that if a party makes a mortgage or
affects to make one, but it proves to be defective, by reason of some inform-
ality or omission, such as failure to record in due time, defective acknowl-

edgment, or the like, though even by the omission of the mortgagee himself, as the instrument is at least evidence of an agreement to convey, the conscience of the mortgagor is bound, and it will be enforced by a Court of equity, not only as against the mortgagor, but as against judgment creditors of the mortgagor obtaining their judgments subsequent to the date of the mortgage, except where this principle has been modified by statute.

2nd. That at the time of the execution of the mortgage in question, the mortgagor had full and complete power of conveying or charging the land, provided it was *bona fide* as against creditors; and having so agreed to charge it, in equity he had actually charged it, and a Court of equity would enforce the charge.

3rd. That a judgment has relation to the time when it is entered up. It will not affect any *bona fide* conveyance made for value before that time, for it only attaches upon that which is then, or afterwards becomes the property of the debtor; and if the property be charged in equity before the entry of the judgment, the judgment will not affect such charge.

4th. But under the provisions of sec. 23, of Art. 16, of the Code, which should be applied to this case, none of the creditors becoming such after the date of the mortgage, could be, in any manner, affected by the enforcement of the mortgage.

5th. That the judgment creditors were entitled to the benefit of their liens on the land, according to their priority in date, as among themselves; but, as against the mortgagee, those judgments rendered on contracts made prior to the mortgage, must be subordinated and made to give place to the mortgage, if that be necessary for the satisfaction of the mortgage debt; and must be taken in their inverse order of date, and the distribution made to them, or which would have been made to them but for the mortgage, must be applied to the mortgage debt instead of the judgments; that is to say, the last judgment rendered for any debt or cause of action existing at the date of the mortgage, must be the first to yield to the mortgage, and so in the inverse order of the judgments for debts or claims antedating the mortgage.

6th. Therefore to whatever distribution those judgments would be entitled, if the mortgage had not been made, the mortgagee would be entitled by substitution, to the extent of full payment, if the distribution to such judgments be sufficient for the purpose. But the judgments rendered on contracts made after the date of the mortgage, whatever the order of their rendition, remained unaffected by the mortgage; they were entitled to distribution in their order of priority as if the mortgage had not been made.

7th. That there was no evidence sufficient to affect any of the subsequent creditors with notice of the mortgage, except the wife of the mortgagor, for whose benefit the deed of trust was made; and as that deed covered the land embraced in the mortgage, and was made to secure a debt due the wife long before the date of the mortgage, and was made to the son of the mortgagor in trust for the benefit of the wife who joined in the prior mortgage, the deed must be regarded as affected with notice to the wife of the existence of the mortgage, and therefore could not be set-up as against the mortgage.

APPEAL from the Circuit Court for Montgomery County, in Equity.

The appeal in this case was taken from a decree directing the sale of the mortgaged premises in the proceedings mentioned, and from an order ratifying certain auditor's accounts distributing the proceeds of sales, and rejecting others. By the accounts ratified the judgments rendered on contracts made after the date of the mortgage were awarded payment in full, and to the mortgage claim was awarded the balance, less certain expenses, which was not sufficient to pay it in full. Creditors who held judgments obtained on claims existing prior to the mortgage, Mrs. Cornelia Jones who claimed under a deed of trust, and her trustee appealed. The case is further stated in the opinion of the Court.

The cause was argued before STEWART, BRENT, MILLER, ALVEY and ROBINSON, J.

*James B. Henderson* and *Thomas Anderson,* for the appellants.

The defect in the mortgage consists in this, that having been acknowledged before a justice of the peace in Frederick County, it should have had the certificate of the clerk of the Circuit Court for Frederick County, as to the official character of the justice taking the acknowledgment. Such record furnishes no notice of the existence of the

mortgage, actual or constructive.   1 *Code, Art.* 24, *secs.* 1 and 3 ;  *Price & Bevans vs. McDonald, et al.,* 1 *Md.,* 403 ; *Johns vs. Scott & Reardon,* 5 *Md.,* 81 ;  *Cockey vs. Milne's Lessee,* 16 *Md.,* 200 ;  *Johnson, et al. vs. Canby, et al.,* 29 *Md.,* 211 ;  *Grove vs. Todd,* 41 *Md.,* 633.

In support of the position that the mortgage is to have priority over judgments recovered on contracts made prior to the execution of the mortgage, the Court below referred to the cases of *Pannell & Smith vs. Farmers' Bank of Md., et al.,* 7 *H. & J.,* 202 ;  *Carson & Vickery, Adm'rs, et al. vs. Phelps, Trustee, et al.,* 40 *Md.,* 73 ; *Sixth Ward Build. Asso., No. 5, vs. Wilson, et al.,* 41 *Md.,* 506.

None of these cases, in our opinion, sustain the position taken by the complainant and the Court below.   The case at bar differs from these cases in this, that the appellants, to whose claims the unrecorded mortgage by the decree of the Court, and the order ratifying the auditor's report, is preferred, had obtained judgments, which were liens on the property before the filing of the appellee's bill, and had secured a legal advantage of which they cannot now be deprived.   The appellants' judgments were liens on the property from the date of their rendition.   *Anderson, et al. vs. Tuck,* 33 *Md.,* 225.

The appellants therefore contend, that as all their judgments were obtained before the filing of the appellee's bill to secure a lien on said property, they should be satisfied out of the proceeds thereof, in preference to said mortgage and according to seniority.   *Underwood vs. Ogden,* 6 *B. Monroe,* 606.

While the case, in the matter of the petition of *Howe,* 1 *Paige Eq. Rep.,* 125, 130, and the case of *Whitworth vs. Gaugain,* 3 *Hare,* 416, and the authorities in *White & Tudor's Leading Cases in Equity,* cited by the appellee in his brief, seem to establish the proposition that an equitable mortgage has preference over general creditors, including judgment creditors, in distributing the proceeds of the mortgaged premises ; and the whole current of English

authorities, so far as we have been able to examine them, run in the same direction, still the questions involved in this case did not arise in any of them, nor in any of the cases decided in this State.

In this State judgments considered *inter se* must be paid according to their seniority. And *Art.* 16, *sec.* 23 *of the Code,* provides that no unrecorded mortgage shall in any manner affect the creditors of the mortgagor, who may trust him after the date of the mortgage.

If the unrecorded mortgage cannot have preference to junior judgment creditors without notice, and the junior judgment creditors cannot, under the law of this State, have priority over senior judgment creditors, the only rule the Court can adopt is to pay off the judgments according to seniority, without reference to the imperfect mortgage.

But whatever rule the Court may adopt in the distribution of the fund as between the mortgagee and the judgment creditors, it should not ratify the order of the Court, giving preference to junior over senior judgments—*inter se* the judgment creditors must have preference according to seniority.

*Spencer C. Jones,* for the appellee.

On the part of the appellee it is admitted, that the record of this mortgage is not constructive notice to creditors, becoming such after the date of the mortgage, unless such subsequent creditors had actual notice of such mortgage; and it is further admitted that the testimony does not show that the subsequent creditors had such notice.

Under the provision of Article 16, sec. 23, of the Code of Public General Laws, a deed not recorded in time may be recorded *saving the rights of creditors of the party making such deed, who may trust such party after the date of the deed.*

The power to record a mortgage not recorded in time, or to obtain a decree for the sale of such mortgaged prem-

ises, subject to the rights of subsequent creditors, is settled by the cases of *Wood vs. Fulton,* 4 *H. & J.,* 202, and *Brooke vs. Dent,* 1 *Md. Ch. Dec.,* 523. A Court of Equity will enforce a mortgage not recorded in time, or defectively executed, where it is "plain, explicit and in writing." *Nelson vs. Hagerstown Bank,* 27 *Md.,* 51.

The mortgage in this case as between mortgagors and mortgagee, has all the requisites of a valid mortgage, and between them is a valid instrument, and is only invalid, by reason of the omission of the certificate of the clerk, as to creditors who may trust John L. T. Jones after the date of such mortgage. The conveyance passes to the mortgagee the title of John L. T. Jones and wife, leaving but an equity of redemption in John L T. Jones. It is a specific lien on the property, and in any contest with general creditors prior to the deed, even though such creditors may obtain judgments subsequent to the execution of the mortgage, has priority of lien, the mortgage in this case being a specific lien on the land, the judgments being general liens upon the interest which Jones had. See *Whitworth vs. Gaugain,* 3 *Hare,* 416 ; *Leading Cases in Equity, vol.* 1, *part 2nd, page* 242 ; *4th American, from 4th London Edition, same vol.,* 954, (*Russell vs. Russell,*) *and note to cases* ; *In the matter of Howe,* 1 *Paige's Eq. Rep.,* 125, 130 ; *Repp vs. Repp,* 12 *Gill & John.,* 341 ; *Conrad vs. The Atlantic Ins Co.,* 1 *Peters,* 443.

These authorities conclusively show that judgments as such are postponed in equity to a prior specific lien in equity. The judgments in this appeal being all subsequent to the date of the mortgage, have therefore no priority of lien as such over the mortgage of the complainant.

In this case it appears by the audits which were ratified, that the fund distributed pays the judgments rendered on contracts made after the date of the mortgage, in full, and that the balance of the fund is insufficient to pay the mortgage in full.

In a conflict between an equitable mortgage and claims of creditors, created prior to the date of the mortgage, the prior equitable lien has precedence over such claims.

Such prior equitable mortgage being a specific lien on the property, has precedence over the general lien of judgments rendered on claims created before the date of the mortgage.

The claim of Mrs. Cornelia Jones cannot affect the prior equitable right of the complainant, because she united with her husband, in the execution of the mortgage, and therefore had notice of the equitable lien of the complainant.

By the mortgage, all the estate of the mortgagors was pledged to satisfy the mortgage debt, and creditors prior to the date of the mortgage, recovering judgments since the date of the mortgage, have only general liens upon the interest which John L. T. Jones then had at the date of the judgments, and can only affect that interest, and not that which had already passed to the mortgagee.

ALVEY, J., delivered the opinion of the Court.

The bill in this case was filed by the appellee as assignee of Elizabeth A. Simmons, of a mortgage and single bill, for $2500; the single bill being executed by John L. T. Jones, and the mortgage by the said Jones and his wife; both instruments bearing date the 19th of April, 1871. The mortgage was in all respects duly executed and acknowledged by the mortgagors, and the consideration sworn to by the mortgagee; and it was filed for record within the time prescribed by law, and actually recorded, in Montgomery County, where the land mortgaged is situate; but the acknowledgment and affidavit having been made before a justice of the peace in Frederick County, there was an omission to obtain the clerk's certificate of the official character and qualification of the justice, as required by the Code, Art. 24, sec. 3. The

.mortgagor, Jones, being largely indebted on contracts made both before and since the date of the mortgage, upon which a large number of judgments have been recovered subsequent to that date, the present bill is filed to enforce the mortgage, thus ineffectually recorded, upon the footing of a contract, and as an equitable charge upon the land embraced in it.  This is resisted by the judgment creditors, upon the ground that their judgments have created liens upon the land, and that such liens cannot be displaced or interfered with by a prior unrecorded or equitable mortgage, which should only be enforced as against the mortgagor, and his ordinary or non-lien creditors, existing at the date of the mortgage.

Two questions arise: 1st, whether the lien of a judgment can be displaced or subordinated to that of a prior equitable mortgage or charge? and, 2ndly, if such mortgage or charge can be enforced as against judgment liens, in what order are the creditors to be affected thereby?

1. The principle is now so well settled, that it would seem to be beyond all question and controversy, that if a party makes a mortgage, or affects to make one, but it proves to be defective, by reason of some informality or omission, such as failure to record in due time, defective acknowledgment, or the like, though even by the omission of the mortgagee himself, as the instrument is at least evidence of an agreement to convey, the conscience of the mortgagor is bound, and it will be enforced by a Court of equity.  *Taylor vs. Wheeler*, 2 *Vern.*, 565 ; *Mestaer vs. Gillespie*, 11 *Ves.*, 621, 624; *Price & Bevan vs. McDonald*, 1 *Md.*, 414.  As against the mortgagor himself this proposition was never regarded as questionable, (*Carson & Vickery vs. Phelps*, 40 *Md.*, 73,) but as against judgment creditors of the mortgagor, obtaining their judgments subsequent to the date of the mortgage, there was formerly some dispute.  The question, however, both in England and in this State, has been long since settled; and the

cases, without an exception, so far as we are informed, hold that a judgment, being but a general lien, must be subordinated to the superior equity of a prior specific lien, created by a defective mortgage or conveyance. Judgments create liens only because the land is made liable by statute to be seised and sold on execution; (*Miller vs. Allison*, 8 *Gill & John.*, 38; *Combs vs. Jordan*, 3 *Bland*, 284, 298–310; *Eschbach vs. Pitt*, 6 *Md.*, 77; *Tayloe vs. Thompson*, 5 *Pet.*, 358;) but such lien secures to the creditor neither *jus in re* nor *jus ad rem: Ex parte Knott*, 11 *Ves.*, 609, 617; *Lacy vs. Fugle*, 2 *Phill.*, 442; *Conrad vs. The Atlantic Ins. Co.*, 1 *Pet.*, 442–3. At the time of the execution of this mortgage the mortgagor had full and complete power of conveying or charging the land, provided it was *bona fide* as against existing creditors, and the general principle is, that if a party has power to charge certain lands, and agrees to charge them, in equity he has actually charged then; and a Court of equity will enforce the charge. *Alexander vs. Ghiselin*, 5 *Gill*, 187; *Rolleston vs. Morton*, 1 *Dr. & War.*, 195. And the fact that judgments have been subsequently recovered against the party agreeing to convey or charge the land, will in no manner defeat the right to have the agreement executed. As has been very properly said, a judgment has relation to the time when it is entered up. It will not affect any *bona fide* conveyance made for value before that time, for it only attaches upon that which is then, or afterwards becomes the property of the debtor. The fact that the debtor may retain the property at law does not change the principle upon which a Court of equity proceeds. If the property is charged in equity before the entry of the judgment, the judgment will not affect such charge. *Whitworth vs. Gaugain*, 1 *Phill.*, 728, 729. The judgment creditor therefore stands in the place of his debtor, and he can only take the property of his debtor, subject to the equitable charges to which it was justly liable in the

hands of the debtor, at the time of the rendition of the judgment,—except in those cases where the principle may have been modified by express statute. *Taylor vs. Wheeler,* 2 *Vern.,* 565 ; *Finch vs. Earl of Winchelsea,* 1 *P. Wms.,* 277, 282 ; *Sir Simeon Stewart's case,* cited in *Burn vs. Burn,* 3 *Ves.,* 573, and stated and approved in *Alexander vs. Ghiselin,* 5 *Gill,* 185.

In no case to be found in the books is the question more directly and strongly presented than in that of *Whitworth vs. Gaugain,* 3 *Hare,* 416. In that case, an equitable mortgagee of lands was held to be entitled in equity to enforce his charge on the lands in priority to a creditor of the mortgagor, who, without notice of the equitable mortgage, had, subsequently thereto, recovered judgment against the mortgagor, and obtained actual possession of the lands by writ of elegit and attornment of the tenants. A stronger case than that could hardly be stated ; and yet it was held, upon full review of the cases, that, notwithstanding the judgment had been executed to the extent of obtaining actual possession of the land under the elegit, the equitable mortgagee had the superior equity, and, consequently, was entitled to priority. That case was affirmed on appeal, upon full review of the authorities by the Lord CHANCELLOR, (1 *Phill.,* 728,) and it has been fully approved in subsequent cases. *Abbott vs. Strattan,* 3 *Jones & Lat.,* 614 ; *Eyre vs. McDowell,* 9 *H. L. Cas.,* 619, 642 ; *Beavan vs. Lord Oxford,* 6 *De G. M. & Gord.,* 507. These cases are the stronger, as they involve the consideration of the Act of 1 & 2 Vict., ch. 110, as applicable to England, and the similar Act of 3 & 4 Vict., ch. 105, as applicable to Ireland, which enacted that a judgment shall operate as a charge on all lands of which the judgment debtor shall, at the time of entering up judgment or afterwards, be seized or possessed, or over which such judgment debtor shall, at the time of entering up judgment or afterwards, have any disposing power which he might, without the consent

of any other person, exercise for his own benefit. These statutes, it was decided, contained nothing to vary the rule as to the equities to which the property may be subject. For, as said by Lord CRANWORTH, in *Eyre vs. McDowell, supra,* the debtor could not have appropriated the land in question to the liquidation of his debt, without first satisfying the claim of his equitable mortgagee, and the Legislature did not intend to enable the creditor by judgment to take what his debtor could not give.

This well established principle of the English cases has been fully adopted in our own; and the cases to which we are about to refer are, we think, quite decisive of the question under consideration.

The first of these is the case of *Hampson vs. Edelen,* 2 *H. & J.,* 64, where there was a contract of purchase, and a part only of the purchase money paid; it was held, that a judgment recovered by a third person against the vendor, in the interval between the making the contract and the full payment of the purchase money, or the conveyance of the estate, could not defeat or impair the equitable interest of the vendee; and that the judgment constituted no lien on the land to affect the right of the *cestui que trust,* the purchaser. Then we have the case of *Repp vs. Repp,* 12 *Gill & John.,* 341. There a father deeded his land to his son, and took from the latter an agreement in writing, *though neither acknowledged nor recorded,* to pay certain amounts to his other children. For these amounts, the son executed his bonds, and left the father in possession of the land. The son afterwards became insolvent, and deeded the land to his insolvent trustee for the benefit of his creditors, among whom were various judgment creditors. On this state of case, it was held, that a lien existed for the payment of the bonds out of the proceeds of the land, as against the son, his trustee, and *judgment* and general creditors. And in the still later case of *Alexander vs. Ghiselin,* 5 *Gill,* 138, 181, 185, though a case

for the specific execution of an agreement for a mortgage of personal property, the Court recognized, in the fullest manner, the principle that equitable mortgages of real estate will be enforced, not only against the contracting party, but his judgment and other creditors.

It is clear, therefore, that the fact of the existence of judgments, recovered subsequent to the date of the mortgage, gives to the judgment creditors no such fixed lien upon the land as to exclude or defeat the security intended by the mortgage ; and it was in accordance with this view that the decree appealed from was passed.

2. Then, the next question is, as against what creditors can this equitable mortgage be enforced, under the statutes of this State?

This is not an application, under sec. 23 of Art. 16 of the Code, to admit the mortgage to record. It is an application to enforce a non-recorded mortgage as an equitable charge; the recording in fact being abortive, because of the failure to procure the certificate of the official character and qualification of the justice taking the acknowledgment. But we think the rule prescribed by sec. 23 of Art. 16 of the Code, just referred to should be applied to this case. This being a mortgage that could have been recorded, there is no reason why the mortgagee should be in any better condition on this application than he would be if this were an application to admit his mortgage to record, because it was not recorded within the time prescribed by law, or if the mortgage had been admitted to record by a decree of the Court, passed under the statute, and this were an application to enforce it. In such case, by the terms of the statute, it is declared that such deed or mortgage shall not "in any manner, affect the creditors of the party making such deed, who may trust such party after the date of the said deed." This section of the Code embodies the 11th section of the Act of 1785, ch. 72 ; and its construction has been the subject of consideration in

several cases which occur in our reports. In the case of *Wickes vs. Chew,* 4 *H. & J.,* 543, 547, one of the earliest cases, while holding that the provisions of the statute did not apply in that case, the Court said that the statute was not intended to give relief in cases which were before without remedy; but was intended to give additional remedy, by enabling a party acquiring equitable rights, under a deed not operative in law for want of recording, to perfect those rights, by applying to the CHANCELLOR to order the original instrument to be recorded, and thus to give it the effect which by law it would have had, if recorded in due time, instead of going into chancery to enforce a specific performance or compel a conveyance. The statute was intended, say the Court, to give a cumulative remedy to persons able to contract, and who, by deed, acquire rights which equity will protect. In a later case, it was decided that a mortgage, omitted to be recorded in due time, from no fraudulent design, will, under the statute, be decreed to be recorded, and that the mortgaged premises be sold for the payment of the mortgaged debt; with a saving in favor of purchasers without notice, and that the mortgage shall not, in any manner, affect the creditors of the mortgagor, who may have trusted him after the date of the mortgage. *Sprigg vs. Lyles,* 2 *Gill & John.,* 446. See also the cases of *Pannell & Smith vs. The Farmers' Bank,* 7 *H. & J.,* 202; *Sixth Ward Build. Asso., No.* 5, *vs. Wilson,* 41 *Md.,* 506, 514.

None of the creditors, therefore, becoming such after the date of the mortgage, can be, in any manner, affected by the enforcement of the mortgage. Here, all the judgments against the mortgagor appear to have been rendered after the date of the mortgage; but many of them were for debts contracted before that time. It becomes necessary, therefore, to determine in what order the liens of the several judgments for debts prior to the date of the mort-

gage are to be displaced, and what are the rights of the judgment creditors as among themselves, having respect to the mortgage claim. It is conceded, as we understand, that the lands embraced in the mortgage constitute the only fund for the payment of debts ; and, consequently, there is no question of marshalling as among the different classes of creditors. The judgment creditors are entitled to the benefit of their liens on the land, according to their priority in date, as among themselves ; but, as against the mortgagee, those judgments rendered on prior contracts must be subordinated and made to give place to the mortgage, if that be necessary for the satisfaction of the mortgage debt. There is no evidence in the record of any ordinary or non-lien debts contracted by the mortgagor since the mortgage, and which still remain unpaid. All the debts contracted since the mortgage appear to have taken the form of judgments. And it is apparent that the fund realized from the sale of the land is largely insufficient to pay all the judgments, and the mortgage debt beside. In such state of case, the judgments rendered on contracts or causes of action existing at the date of the mortgage, must be taken in their inverse order of date, and the distributions made to them, or which would have been made to them but for the mortgage, must be applied to the mortgage debt instead of the judgments ; that is to say, the last judgment rendered for any debt or cause of action existing at the date of the mortgage, must be the first to yield to the mortgage, and so in the inverse order of the judgments for debts or claims antedating the mortgage. To whatever distribution those judgments would be entitled, if the mortgage had not been made, the mortgagee will be entitled by substitution, to the extent of full payment, if the distributions to such judgments be sufficient for the purpose. But the judgments rendered on contracts made after the date of the mortgage, whatever may be the order of their rendition, remain unaffected by the

mortgage; they are entitled to distribution in their order of priority as if the mortgage had not been made.

This order of distribution is in accordance with the principle upon which the CHANCELLOR acted in the case of *Pannell & Smith vs. The Farmers' Bank,* 7 *H. & J.,* 202, and we think his construction of the statute was, in this respect, entirely correct. The claim of no creditor, subsequent to the date of the mortgage, whether it be in the form of a judgment or otherwise, is in any manner affected by such construction and mode of distribution. He gets exactly what he would have received if the mortgage had not been executed, and he in justice can claim no more. The fact that the prior debts, and the judgments that may have been rendered thereon, are overreached by the mortgage, can certainly furnish neither equity nor reason for placing the creditors subsequent to the mortgage in a more advantageous position, with respect to the fund, than if the mortgage had not been made. While their claims are not to be affected, by the enforcement of the mortgage, they should not be allowed to take any special advantage from it, as they certainly would do, if all prior debts were simply rejected, and the fund be thus increased for the payment of their claim. There is nothing in the statute to justify the conclusion that the Legislature intended to produce any such result.

Such being our opinion in regard to the rights of the parties and the mode of distributing the fund, we quite agree with the Court below, that there is no evidence in the record sufficient to affect any of the subsequent creditors with notice of the mortgage, except Mrs. Cornelia Jones, the wife of the mortgagor, for whose benefit the deed of trust was made, of the 17th April, 1875. This deed is made to embrace the land that is embraced in the prior mortgage, now the subject of controversy; but the deed is to secure a debt due the wife long before the date of the mortgage; and as it is made to the son of the mort-

gagor in trust for the benefit of the wife, who joined in the prior mortgage, the deed must be regarded as affected with notice to the wife of the existence of the mortgage, and therefore cannot be set-up as against the mortgage. *Price & Bevans vs. McDonald, et al.,* 1 *Md.,* 403.

The two series of auditor's accounts, each series designated as accounts A, B, C, and D, and which were ratified by the Court below, properly distributed the fund, in accordance with the principle of distribution which we have stated. The Court below was therefore right in overruling the various exceptions to those accounts, and in ratifying such accounts, to the exclusion of the others, reported by the auditor at the instance of some of the judgment creditors.

*Decree and order affirmed, with costs,*
*and cause remanded.*

(Decided 8th March, 1878.)