JAMES F. FAILEY, Receiver, *vs.* WILLIAM H. FEE et al.

*Mutual Benefit Societies—Matured Certificates—Preferences—Time of Payment—Insolvency of Association—Receivers—Attachments —Validity of Contract.*

A certificate issued by a mutual benefit association by which the holder is entitled to a certain sum at the end of a term of years, provided he shall pay all lawful assessments and comply with the laws of the association, is not a contract impossible of performance and therefore invalid, although the scheme adopted by the association for carrying out its engagements may be impracticable.

The holder of a matured certificate for the payment of a sum of money issued by a mutual benefit association is a creditor of the association, and as such is entitled to priority in payment over unmatured certificates, and has a right to attach the funds of the association when insolvent.

The validity of the claims under such matured certificates is not affected by the subsequent insolvency of the association.

The matured certificates held by the attaching creditors provided for the payment of a sum not greater than $1,000. At the time of the maturity of the certificates the maximum amount was payable under the laws of the association, there were sufficient funds to pay them, and they would have been paid but for the appointment of receivers. *Held,* that the amounts to which the attaching creditors were entitled were certain and fixed.

The certificates provided for payment at the end of seven years, while a by-law of the association, adopted after the issuing of the certificates, provided that the benefits should be adjusted within ninety days after the expiration of the certificate. The charter of the association provided that benefits should be paid as directed either by the by-laws or in the certificate. *Held,* that the provision as to the time of payment mentioned in the certificate should govern, and that attachments issued after the maturity of the certificates and before the expiration of the ninety days were not premature.

Receivers were appointed for a mutual benefit association incorporated in another State, both in that State and in this State. Before the appointment in either State, the holders of certain matured certificates of indebtedness laid attachments upon the funds of the association in this State. *Held,* that the attaching creditors were entitled to

payment out of these funds whether their attachments were valid or not, and that the balance only should be paid over to the receiver in the State of the domicile of the association.

Appeal from a decree of the Circuit Court of Baltimore City (WRIGHT, J.), by which it was adjudged that the holders of matured certificates issued by the Order of the Iron Hall, an insolvent Indiana corporation, who had laid attachments upon the funds of the Order in this State, were entitled to be paid in full, and that the balance should be paid over to the receiver of the Order in Indiana.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, BOYD and RUSSUM, JJ.

*E. J. D. Cross* and *Herbert R. Preston* for the appellant.

The Supreme Sitting of the Order of the Iron Hall was a corporation of Indiana having branches in this and other States. It was what is known as a " short term Order," issuing a policy of insurance by which upon payment of assessments the holder became entitled to sick benefits and a final benefit of $1,000 at the end of seven years. The assessments levied on a $1,000 policy amounted to about $325 for the term during which the policy ran, and hence the corporation necessarily became insolvent.

On July 29, 1892, a bill was filed in Indianapolis, and on August 23 the appellant was appointed receiver of the corporation. On August 22, 1892, the bill in this case was filed, and on August 23 the receivers appointed in this cause. All of the attachments were laid on August 22nd, 1892, except one, which was laid on August 23rd, and the intervening petition of the Safe Deposit and Trust Co. was filed April 24, 1894. There was an agreement of counsel that the attachment creditors should release their attachments, and allow the funds to be paid over to the receivers, retaining any lien they had acquired by attachment, and submit their claims to the decision of the Court in their cause. Failey, the general receiver, filed his intervening

petition, claiming the fund, and the Court (DENNIS, J.), de-
cided that the fund should be paid over to him as the gen-
eral receiver of the corporation, and distributed by the
Indianapolis Court, the Court of the domicile of the corpor-
ation, which was done.    The attachment cases were reserved,
and a fund retained to meet them, and the Court below
(WRIGHT, J.), having decided in favor of the attaching claim-
ants, Failey, receiver, took this appeal.    The appellees have
all filed their claims in Indianapolis, and are entitled to share
there in the distribution which has been made, should this
Court reverse the decree of the Court below, and direct the
balance of the fund to be paid to the Indianapolis receiver.

The appellees claim that they are entitled to this fund
upon the following grounds : 1st. That as common cred-
itors they acquired a lien by attachment before the appoint-
ment of the receivers.    2d. That if they acquired no such
lien, they are domestic creditors, and hence entitled to be
paid before the fund is sent out of the jurisdiction of the
Court for distribution by a Court of a foreign jurisdiction.

To this the appellant answers : 1st. That the attachments
were prematurely brought, the benefits not being payable
at the time the attachments were laid.    2d. That if the pol-
icies had matured and were payable, a member of a mutual
association does not become such a creditor, upon the ma-
turity of his policy, as to enable him to attach the funds of
the association when insolvent.    3d. That a member, upon
the maturity of his policy, does not become a creditor within
the meaning of the rule that requires domestic creditors to
be paid before sending the fund out of the jurisdiction.    4th.
That under the ruling of the Pennsylvania Court in the case
of the Order of Tonti, the contract of insurance was one not
capable of performance, and cannot be so treated by a Court
of Equity without doing great injustice to the non-matured
certificate-holders.

The laws of the Supreme Sitting, sec. 6, provide that
" Final benefits shall be, when found correct, adjusted within
ninety days from the date of expiration of the benefit cer-

tificate, and claims for such final benefits must be filed within thirty days from the date of expiration." It will be seen that the time given for the payment had not expired in any of these cases, and therefore it is submitted that the claims were not due, and attachments would not lie. It seems clear that under such a provision no action can be brought until the expiration of the time. In the leading case of *Steen* v. *Fire Ins. Co.*, 89 N. Y. 315, the language of the policy was that the holder was insured in a certain sum " to be paid in sixty days after the proofs required by this company shall have been received at the office of the company in New York, and the loss shall have been satisfactorily ascertained and proved, as required by the provisions of this policy." The Court held, that an action would not lie until after the expiration of the time. It will be noticed in this case that there was no prohibition against bringing an action, the language being simply that the insurance money was " to be paid within sixty days."

See also *Spare* v. *Ins. Co.*, 17 Fed. Rep. 568 ; *Velte* v. *Ins. Co.*, 30 Fed. Rep. 668 ; *Barber* v. *Ins. Co.*, 16 W. Va. 658 ; *Ellis* v. *Ins. Co.*, 64 Iowa, 507 ; *Mayor, &c.*, v. *Ins. Co.*, 39 N. Y. 45 ; *Bauer* v. *Sampson Lodge*, 102 Ind. 266 ; *Bogards* v. *Ins. Co.*, 79 Mich. 440 ; *Bacon on Benefit Societies*, sec. 185.

If, under the above authorities, the claimants have acquired no lien by attachment, their claim must rest upon the ground that they are domestic creditors, and as such entitled to bé paid before the fund is sent out of the jurisdiction. This is a very different question from the question whether matured certificates are to be paid in preference to unmatured. This latter question is passed upon in the *B. & O. Railroad Co.* v. *Employees' Relief Ass'n*, 77 Md. 566, and in *Mayer* v. *Attorney-General*, 32 N. J. Eq. 813. In those cases it is held that the status of the member changes upon maturity of the certificate. The fact that matured certificate holders are called creditors does not bring them within the reason of the rule in *Booth* v. *Clark*, 17 How.

322, which is the case upon which this doctrine rests. In *Parsons* v. *Charter Oak, &c., Co.*, 31 Fed. Rep. 305, JUDGE SHIRAS discusses this doctrine at length, and shows with great clearness that it was never intended to cover such a case as this. In ordinary cases, it is a race of diligence between creditors, and if a creditor by securing the appointment of a receiver in a distant State could draw into that State the whole assets of the insolvent, he would manifestly do great injustice to other creditors, who would have to follow the fund. The question in this case was the removal of the assets of an insurance company from one State to another, and the Court treats the policy-holders as creditors, laying down the rule, " when the assets and fund to be distributed is a common one, derived from the payments made by all creditors, as in the case of an insurance company, the fact that part or the whole of the assets may be invested in any one State does not give to the creditors residing in such State a superior right thereto," and the fund was remitted to the home receiver. To the same effect are the cases of *Rolfe* v. *Rundel*, 103 U. S. 222; *Rundel* v. *Life Assur.*, 10 Fed. Rep. 720; *Davis* v. *Same*, 11 Id. 781; *Taylor* v. *Same*, 13 Id. 493.

The Court below reserved its decision on these attachment cases, as they were not argued before it, but the law found in the opinion in fact covers these cases, as do the other Iron Hall cases of *Bushnell* v. *Sup. Sitting*, 161 Mass. 224; *Ware* v. *Same* (N. J.), 28 Atl. Rep. 1041. The reason for sending the funds to Indiana to be distributed, that the proper place to make distribution among the members of a corporation is at the domicile of the corporation, and that is the only place where the fund can be equitably distributed, applies to matured as well as unmatured certificates. Whether matured certificate holders are termed creditors or not, they claim certain rights growing out of their being, or having been, members of an Indiana corporation. The affairs of that corporation are now being wound up by an Indiana Court, and the rights of the various classes of persons interested are there being determined.

In *Bordley's appeal, in re assigned estate of the Order of Tonti* (Penn. Supreme Court), the report of the auditor below was affirmed. In this case the insolvency was that of an association similar to the Iron Hall. The auditor reported that the matured certificate-holders are not entitled to any preference over their fellow members in the distribution of the assets of the insolvent order, but must participate in the distribution of the funds in proportion to their several contributions thereto. The finding of the auditor was that the contract of the member was one that never could have been performed; and that being the case, upon insolvency, it was not proper to treat it as if it had been a good and valid contract, especially so, when to so treat it would result in giving to a member whose certificate had matured a few days before the assignment about three times the amount he had paid in, and to one whose certificate would have matured a few days after, about 10 *per centum* on the amount he had paid in.

The plain fact about this order, as about all of these " short term " orders, is that they appealed directly to the gambling spirit. No member was so stupid as to suppose that he could get $1,000 by the payment of $525, in any legitimate way; the hope of each was that the order would live until his policy matured, and he recognized the fact that only by taking the money of those coming after him to pay his benefit, could he be paid. Each one hoped, like school boys in their games, that he would not be the last man. The Courts have been very lenient with these orders. The Pennsylvania Court in affirming the very excellent report of its auditor, is right in treating such a contract as unenforceable. It would be a fraud but for the fact that it is so patent that no one could be deceived thereby. Certainly a Court of Equity will not enforce such a contract; to allow these attachments is to sanction an evil which has taken much money from a class who could ill afford it.

*Chas. J. Wiener* and *D. K. Este Fisher* (with whom was *William A. Fisher* on the brief), for the appellees.

1. The holders of matured certificates are creditors of the corporation. 2 *Bacon on Benefit Societies,* sec. 478 ; *Vanatta* v. *N. J. Mutual Life Co.,* 31 N. J. Eq. 15 ; *Com.* v. *Mass. Mutal, &c., Co.,* 112 Mass. 116 ; S. C., 119 Mass. 45 ; *Mayer* v. *Attorney-General,* 32 N. J. Eq. 815 ; *B. & O. Railroad Co.* v. *B. & O. Employees' Relief Assn.,* 77 Md. 566.

2. Being such creditors they have a right to lay attachments. *Cohen* v. *Supreme Sitting, &c.,* 63 N. W. Rep. 304 ; *Day* v. *Postal Tel. Co.,* 66 Md. 354. The Courts will not compel a Maryland creditor to follow a fund into a foreign jurisdiction for a collection of his claim against it. This phase of the question distinguishes this case from those decided adversely to the matured certificate-holder. We only know of two such decisions—one in Indiana, the other just decided in Pennsylvania. In both cases the claimants were residents of the habitat of the insolvent corporation—they had not laid attachments, nor did they claim any lien upon the fund—the doctrine of the Postal Telegraph case could not apply to them. In that case the New York concern being hopelessly insolvent went into the hands of a receiver—*prior to the appointment of the receiver in Maryland*—but in spite of that fact the Court refused to distribute to the foreign receiver and that irrespective of how much or how little the New York creditors would receive upon their claims until our own creditors (that is. those who had filed their claims in this jurisdiction) had been paid in full. Whatever is left after that can go to the foreign receiver, and in this case, has already gone.

3. Had no receiver been appointed and the order continued, we would undoubtedly have had the right to maintain an action if our certificate had not been paid. " The appointment of a receiver does not have the effect of changing any rights of action, or of changing the contract relations existing between the original parties, against whom the receiver is appointed, and their debtors. *High on Receivers,* sec. 204.

4. The receivers, here and in Indiana, were appointed on Aug. 23, 1892, and their appointment dates from the time of their qualification, and not from the day of the application or the filing of a petition.   "A receiver duly appointed by the Court of Chancery is, from the *date of his appointment*, an officer and representative of the Court, but he is not legally clothed with that character, nor able to perform its duties; until his recognizances are perfected.   *   *   *   *   * It is not enough that an order has been made directing the appointment of a receiver.   Until the appointment has been perfected and the receiver is actually in possession, a creditor is not debarred from proceeding to execution. *Cook* v. *Citizens' Nat. Bank*, 73 Inda. 260.   The title of the receiver exists by relation from the date of the order directing his appointment.   *People* v. *Central State Bank*, 35 Howard, 428 ; *Smith* v. *N. Y. Cons. Stage Co.*, 28 Howard, 335 ; *Artizans' Bank* v. *Treadwell*, 34 Barb. 553.   The order for the appointment of a receiver in a creditor's suit followed up by the consummation of the appointment by his giving security, vests the personal estate and equitable interests of the judgment debtors in such a receiver *as of the date of the order*.   *Parker* v. *Williams*, 9 N. Y. 142.   It would seem that as regards the rights of third parties, the appointment of a receiver will not be allowed to take effect or date back by relation to a period prior to his appointment.   *High on Receivers*, sec. 108 ; *Beach on Receivers*, sec. 129.

FOWLER, J., delivered the opinion of the Court.

The Order of the Iron Hall is a beneficial association and was incorporated under the laws of the State of Indiana. A bill was filed in the Superior Court of Marion County of that State by Albert R. Baker and others against said corporation for the appointment of receivers and for its dissolution and winding up.   On the 23rd of August, 1892, the appellant, James F. Failey, was appointed receiver of the said corporation, with power to receive all its property of

every kind within and without the State of Indiana, and on the same day Charles J. Wiener and Joseph C. France were duly appointed receivers by the Circuit Court of Baltimore City, with power to take charge and possession of the property of said corporation in this State. It appears that four of the general officers of the order are citizens of Maryland, residing in the city of Baltimore, and that there are twenty-six of its branch associations established in that city. No objection has been made to the exercise of its jurisdiction by the Maryland Court in the appointment of receivers. Some months subsequent to their appointment the appellant filed his petition in the Circuit Court of Baltimore City, in which he fully sets forth the decree of the Indiana Court by which he was appointed, and prays that the Maryland receivers may be required to account for and hand over to him all the property and funds of said corporation in their possession and under their control. The Maryland receivers answered this petition on the 10th of April, 1894, and in their answer, among other things, they admit that they have in their hands a large sum of money, which they allege was paid to them solely by the branches of said order and the members thereof in this State, and that they are entitled to have the same distributed among such members as reside here, and that the same should not be sent out of this State for distribution, to their prejudice. They also set up in their answer the claims of certain attaching creditors who issued their attachments before the appointment of receivers in either State, and who claim that, as holders of matured certificates, they cease to be members of said order and have become creditors thereof. Subsequently the Circuit Court of Baltimore City ordered its receivers to transmit the funds in their hands to the appellant in Indiana, retaining here, however, sufficient to meet the claims of the attaching creditors, whose claims had not then been determined, but were reserved for future adjudication. On the 9th of December, 1895, the Circuit Court of Baltimore City ordered that the claims of the attaching

creditors should be paid in full. From this order James F. Failey, the Indiana receiver, has appealed.

· It thus appears that the only question presented is as to the correctness of the allowance of the attachment claims, and this depends mainly upon the further question whether these claimants are to be considered as members of the Order, or, being holders of matured certificates, they are to be considered creditors. If they are members they must, as was decided by the Court below, go to Indiana and seek payment from the receivers appointed there. From this decision no appeal has been taken, and all of the funds which were in the hands of the Maryland receivers have been transmitted to Indiana, except the sum involved in this particular controversy, which, as we have seen, was ordered to be retained here to pay creditors, and not members, in this State.

The appellant bases his claim to the fund in question upon the following grounds : First, that the attachments were premature, the benefits claimed under the matured certificates not being payable at the time the attachments were issued. Second, that the holder of a matured certificate does not become such a creditor upon the maturity of his certificate as to enable him to attach the funds of the association when insolvent, nor such a creditor as is contemplated by the rule, that requires domestic creditors to be paid before sending the fund out of this jurisdiction ; and, lastly, that the contract with the order relied on by the holders of matured certificates is not capable of performance, and will not, therefore, be recognized or enforced in a Court of Equity.

We will first consider the nature of the contract which is found in the policy or certificate issued by the Order to each of its members, and one of which is held by and is the basis of the claims of each of the appellees. Without setting forth the certificate in full, it is sufficient for the present purpose to say in general terms that it provides that the holder shall be a member of the Order, entitled to all the rights

and privileges properly belonging to his rank and standing, including a benefit of not exceeding one thousand dollars, provided he shall obey all lawful commands of the Order, pay all lawful assessments and comply with all the laws and usages of the Order, and all laws which may hereafter be enacted, and especially with the conditions set forth in the certificate, which, so far as we need now refer to them, are contained paragraph first, which is as follows : " In case the said member shall continue to pay all assessments and demands which may be legally made against him on this certificate *for the full term of seven years from its date,* * *

* then the said member shall be entitled to a sum not exceeding the principal amount named herein, less the amount he has already received as benefits from the order on account of sickness or other disability or otherwise." We do not think that there is any element of impossibility apparent upon the face of or inherent in the contract as set forth in the certificate. The fact that the business of the order ended disastrously appears, so far as we can judge from the meagre information upon this subject given in the record, to have resulted from a combination of circumstancs, and it is probable that the impracticability of the plan or scheme of the order set forth in the by-laws had much to do in producing this unfortunate result. The officers in this State representing the order say, in their answer to the bill, that they have confidence in the organization and plans of the order, and believe that the present difficulties are the result simply of local mismanagement, and the appellant, in a statement under oath, shows that the order was not without valuable assets. It is as follows :

Cash on hand . . . . . . . . . . . $  715,577.33 .
Notes and other securities . . . . . .      33,148.68
Real estate . . . . . . . . . . .      25,325.00
Money deposited in bank   . . . . .     713,333.70
Reserve fund in various States and Canada .   1,238,643.18
making a total of nearly three millions of dollars. He says, however, that he believes he would not be able to

realize more than $200,000 from the large amount depos-
ited in bank, because of the insolvency, and that it would
depend very much upon the decisions of the Courts of the
various States growing out of suits which followed the ap-
pointment of receivers in Indiana, as to the amount he
would be able eventually to recover from the reserve fund.
It would seem, therefore, that the statement made in the bill
that the effect of the Indiana suit and the allegation in the
answer that the local mismanagement had destroyed the
Order were not altogether without foundation. But the
record does not contain sufficient information as to the
actual work done by this Order to enable us to say with
certainty what was the cause of its downfall. It is true we
have the result, but we are not disposed, as the case is now
presented, to say that the impossibility of performing the
contract *set forth in the certificate* is the sole cause of that
result.

The case of *Bordley et al. in the matter of the estate of
the Order of Tonti*, lately decided in the Supreme Court of
Pennsylvania and not yet reported, adopts the report of the
auditor made in the Court from which that case was ap-
pealed and supports the view so strongly urged by the ap-
pellants in regard to the nature of the contract. But it
seems to us that there is a broad distinction between the
contract itself and the mode which the parties may adopt
to execute it. The contract may be perfectly valid and
capable of execution, while the scheme adopted to execute
it may be impracticable, but it does not necessarily follow
that the fatal defects of the latter attach to and totally de-
stroy the contractual rights secured by the former. The
contract here, is not, as suggested by the appellants, to pay
one thousand dollars at the end of the seven years upon
the payment in the meantime by the member of certain as-
sessments which could not upon any calculation produce
five hundred dollars, but it was to pay a sum *not exceed-
ing* a thousand dollars within seven years upon the pay-
ment during that time of *all lawful assessments* and the

performance of the other conditions set forth in the cer
tificate.    Of course, if the contract in question were the
one suggested, the order could not perform it and live for
any extended period, for it is apparent it could not long
continue to pay out $1,000 for every $500 received.   Such
a condition of things, as we have already intimated, does
not necessarily result from the contract, however much it
may be the result of the plan adopted for assessments or
other mismanagement complained of by some of the officers.
Under such circumstances, especially where, as here, entire
good faith is conceded to the appellees, it would seem to
be much more reasonable to leave the parties subject to
their contract so far as it applies to the changed conditions,
than to entirely ignore it.

   If, then, we are correct in supposing that the contract is
still in existence, what are the rights of the appellees, the
holders of matured cetificates of membership of the said
Order.   This brings us to the consideration of the second
reason upon which the appellant rests his claim, namely, that
the appellees as such holders of matured certificates do not
become such creditors upon the maturity thereof as to attach
the funds of the Order when insolvent, or to give them any
standing to demand that they be paid before sending the
fund to Indiana.    But the weight of authority is against this
view.    In 2 *Bacon on Benefit Societies* and *Life Insurance*,
sec. 478, it is said:  " In mutual companies, claims founded
on policies matured before the receivership are to be pre-
ferred to claims on policies not matured, for the maturity of
the policy changes the status of the policy-holder.   He
stands to the company in the same place that a creditor
stands to the firm ;  he is to be preferred to members of the
firm."    The same principle is announced in the case of *Van-
natta* v. *The New Jersey Mut. Life Ins. Co.*, 31 N. J. Eq. Rep.
19.    In the case just cited, it was urged that the holders of
unmatured certificates and the holders of unpaid matured
certificates should stand upon the same plane, but this con-
tention was thus disposed of:  " The difference," said the

Chancellor, " between the cases is, that in the one the claim was, when the decree was made, the claim of a creditor, and in the other there was no claim but that of a member, which was upon the assets, after *the payment of creditors.*"    And to the same effect are *Commonwealth* v. *Ins. Co.*, 112 Mass. ; S. C. 119 Mass. 45 ; *Mayer* v. *Attorney-General*, 32 N. J. Eq. Rep. ; *Stamm* v. *North Western Benefit Asso.*, 8 West. Rep. 767.    But in the case of the *B. & O. Relief Asso.*, 77 Md. 566, this Court expressed a similar view.    We there held that a claim which had matured by death before dissolution of the association was *a preferred claim.*    And in regard to claims based upon disability caused by sickness or accident, which under the constitution and by-laws of that association entitled a member to the payment of a sum of money as benefits, we said in the same case : " We do not see upon what principle the right of a member to claim for a disability that occurred before the dissolution of the association can be held to terminate with its dissolution."

Some question has been made as to the effect of the insolvency of the Order on the claims of the appellees, but it does not appear to us that the validity or status of the claims can be affected by an insolvency which did not exist until after the maturity of the certificates.    Being creditors the insolvency of the order would have no more effect upon their claims than upon those of any other creditors.    When the certificates matured the holders thereupon became creditors, and they remain so notwithstanding the subsequent insolvency of the Order.

But again, it was urged that the attachments cannot stand because they were issued on claims of uncertain amounts, the certificates held by the attaching creditors not providing for the payment of any definite sum of money, but for a sum not greater than one thousand dollars.    It appears, however, by the agreed statement of facts found in the record, " that at the time when the receivers were appointed there was an amount of money in the hands of the Order sufficient to pay all the matured certificates at the time when the same

were due and payable according to their tenor; that the receiver also had an amount sufficient to pay the same, and that by the law of the Order the maximum amount named in the certificate would have been payable, and it would have been paid if the receivers had not been appointed and the business brought to an end." Hence the amount which each attached creditor was entitled to had become certain and fixed before the attachments issued.

Finally it was urged that the attachments were prematurely issued, because the benefits were not payable at the time those proceedings were instituted. This view is based upon the theory that the time for payment specified in the certificate is controlled by the provisions of a by-law regulating the time of payment, which it is conceded was adopted subsequent to the issuing of the certificates. The latter provides that upon certain conditions which have been complied with, benefits shall be paid at the end of seven years, while the by-law provides that such benefits shall, when found correct, be adjusted within ninety days from the expiration of the certificate. While it is true the certificate is accepted subject to all laws which might, after its date, be enacted by the Order, yet inasmuch as by the third section of the charter it is provided that benefits shall be paid as may be provided either by the by-laws or *in the certificate of membership*, the provision as to time of payment when found in the latter should govern. In the recent case of *Cohen* v. *Order of Iron Hall*, 63 N. W. Rep. 304, in construing a similar certificate, it was said: " The reference to the laws of the association in the present case cannot be said to relate to the time of payment, but rather to the affirmative obligations assumed by the holder of the certificate; especially is this so, in view of the fact that the articles of association expressly provide that the amount shall be paid as may be provided in the by-laws or in the certificate. The fundamental law, therefore, recognized the time of payment as fixed by the certificate, and the by-laws subsequently passed applied only to such certificates as by their terms made the

same payable at the time fixed by the by-law." In addition to this, being creditors, the appellees are entitled to payment whether their attachments are valid or not, and under our ruling in the case of *Day* v. *Postal Tel. Co.*, 66 Md. 354, it is clear the fund should be distributed by the Maryland receivers to the payment of debts established in this proceeding, and the balance, if any, should be paid over to the Indiana receiver.

It follows that the order appealed from must be affirmed.

*Order affirmed with costs.*