52

# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed July 11, 1899.

AMELIA E. MEYERS, ET AL.,
VS.

SUPREME LODGE OF THE ORDER OF THE GOLDEN CHAIN OF BALTIMORE CITY.

*Steiner & Putzel* and *Edward I. Koontz* for plaintiffs.

*S. S. Field* for defendant.

STOCKBRIDGE, J.—

Amelia E. Meyers, the plaintiff, who was at the time of his death a member in good standing of the Order of the Golden Chain, a mutual benevolent association. By the terms of his certificate of membership his widow was entitled upon his decease, and the furnishing to the Order of satisfactory proofs thereof, to receive from the Widow and Orphans' Benefit Fund of the Order a sum not exceeding $3,000, in accordance with the laws of the Order. By the agreed statement of facts it appears that the proof was duly furnished, but Mrs. Meyers was not paid $3,000, or any other sum by the Supreme Council, and she has filed the present bill alleging the insolvency of the Order, and by an amendment to the bill, that its capacity to collect from its members has become impaired; that it is now powerless to raise sufficient money by this means to pay the accrued and accruing death claims against it, and praying that the corporation may be dissolved, and its effects placed in the hands of receivers, and applied to the payment of its liabilities.

The answer admits the plaintiff to be the widow of a deceased member; that the proofs of death have been duly filed; that the claim of the plaintiff has not been paid, and then proceeds to show that the amount in the widows and orphans' fund is utterly inadequate to pay the claim of the plaintiff, and those of others in like position, and sets forth that such has been the condition of the Order for nine years, and that the Association, by the action of its Supreme Lodge, taken on the 9th of May, 1899, proposes to divide the amount now in its widows' and orphans' fund pro rata among those holding death claims against it. It denies the insolvency of the Order and that the plaintiff is a creditor of the Order, insisting that she merely has a claim against a particular fund of the Order, and not against the Order itself.

An agreed statement of facts was filed, and this was supplemented by proofs taken in open Court.

With regard to the status of the plaintiff, whatever may be the rule in other States, there can be no question in Maryland that she is a creditor.

Failey vs. Fee, 83 Md. 96.

B. & O. Relief Assn. case, 77 Md. 566.

The position of the beneficiary named in the certificate of a member and that of the member himself with regard to such an association is entirely different. The latter occupies the position both of insurer and insured, and in such dual position is not deemed a creditor. That is declared distinctly in the case of Condon vs. Mutual R. F. L. Assn., 42 Atl. Rep. 950, and numerous others elsewhere.

When, however, the death takes place the dual relation ceases to exist, the connection of the member with the association is severed, and the beneficiary named in the certificate of the member becomes a creditor. The status of the plaintiff being thus established, the next question is as to the solvency or insolvency of the Order of the Golden Chain, and if it be insolvent, the power of the Court to intervene is conceded, but under the averments of the answer the cases of Barton vs. Fraternal Alliance, 85 Md. 14, and Condon vs. Mutual R. F. L. Assn., 42 Atl. Rep. 950, are relied on as authority for the position that the Order of the Golden Chain is not insolvent in law. In considering these cases, however, the manner in which they came before the Court must not be overlooked.

In the Barton case the cause was disposed of upon bill and answers, and the answers denied all allegations of fraud and swore away all the equities of the bill; the Condon case came up as

between a mutual beneficial association and a member, one who was therefore not a creditor, upon demurrer. The present case, however, is before the Court upon bill, answer and evidence.

It is urged that since the money in this case is payable out of a particular fund that no matter what may be the deficiencies in the Widows' and Orphans' Fund, or from what series of events those deficiencies may have arisen, so long as the order has sufficient money in its general treasury to pay the salaries of its officers, its rent, postage and stationery bills, it cannot become insolvent; that it is a mere collection agency as regards its mortuary fund, in no way liable in respect thereto save to pay what it receives over to those holding maturity death claims. This is based upon the language used by the Court of Appeals in the Condon case, and is perhaps the logical statement of the position of such an association as to its members, but it by no means follows that its position is the same with respect to creditors, those who are the holders of matured death claims. One of the objects of the order as set out in its constitution, and according to the evidence the principal object of the order was "to establish a Widows' and Orphans' Benefit Fund, from which on the satisfactory evidence of the death of a beneficial member of the order * * * a sum not exceeding $3,000, shall be paid to his family or those dependent on him as he may direct." With this avowed object, when it is borne in mind that the policy of the Courts of this State is to regard the contracts of indemnity provided by such associations in the event of the death of a member as having all the essential qualities of ordinary life insurance furnished by the so-called standard mutual companies (Thomas vs. Cochran, THE DAILY RECORD, June 24), it will not do to say at the suit of a creditor, that the Order is nothing more than a collecting agency, without responsibility. It can not as regards holders of mature claims thus separate and hold itself aloof from one or all of the purposes for which it exists, and claim a solvency when it is not in possession of the means to carry out the object of its being.

But it is further insisted in behalf of the Order that the association is not and can not be insolvent for the reason that it has never levied a specific assessment to meet this claim arising from the death of Benjamin Meyers; that it has the power of unlimited assessment, and, therefore, it can never become in legal contemplation insolvent, and the case of Barton vs. Fraternal Alliance, 85 Md., is relied upon as maintaining this proposition.

The power of levying assessments is contained in Section 128 of the Supreme Lodge Laws, as follows:

"Whenever the condition of the Supreme Treasury shall make it necessary to call an assessment to pay a death benefit, the Supreme Secretary shall at once notify every lodge to forward immediately to the Supreme Treasurer the assessment due from every member at the date of said call, in accordance with the form prescribed by the Supreme Lodge, which notice shall include a list of all deaths that have occurred subsequent to the last assessment."

The agreed statement of facts discloses that there are matured and unpaid death claims against the Order to the amount of $116,000; that the amount in the Widows' and Orphans' Fund out of which they are payable, is but $16,000, and that the total additional assets of the corporation, apart from its right to assess its members, is but $1,800. It is further in evidence that the membership of the Order has decreased from 10,281 on December 31, 1895, to 4,722 on July 16th, 1898, and to 3,464 on April 5th, 1899; that since September, 1898, in order to relieve the embarrassed condition of the Order, the calls have been issued for two and one-half assessments in place of one, but that, notwithstanding this increase of the assessments, the amount received for the Widows' and Orphans' Fund upon any one call is less now than formerly, by reason of the decrease in membership; and that calls have been issued and assessments collected since the death of Benjamin Meyers, upon one of which his name appeared.

To these facts conceded or established, let us apply the test of solvency laid down in the Barton case, in connection with the provision of the Supreme Lodge Law 128 of the Order. It is said, in the Barton case, that "solvency of the company can not depend entirely upon what is may have earned and retained as assets, but upon its

capacity to collect by assessment the amount needed to discharge its obligations. The complainants do not aver that such capacity has been impaired so that it has no power to make such collections, and such an averment was necessary to show it was unable to pay its debts, and was, therefore, insolvent."

The test of solvency in such a corporation is therefore the capacity to collect by assessment the amount needed to discharge its obligations. Section 128 of the Supreme Lodge Laws, makes it the duty of the secretary to call an assessment whenever the condition of the Supreme Treasury makes such a course necessary in order to pay a death benefit. This created an unlimited power of assessments, yet as appears from Defendant's Exhibit No. 1 there has not been a single year from 1891 to the present time that the proceeds arising from assessments levied have sufficed to meet the maturing claims of the year. It is claimed for the defendant that from September 28, 1898, the power to make unlimited calls did not exist, by reason of the adoption upon that date of a resolution by the Supreme Lodge, but with regard to this it is to be said that the resolution did not in terms repeal, amend or in any way modify Section 128 of the Supreme Lodge Laws, and in the absence of a clearly manifest intent to alter, Courts will never so construe an Act or Resolution. The incapacity of the corporation to collect by assessment the amount needed to discharge its obligations, which had thus been continuously demonstrated from 1891, was however, still further accentuated after the adoption of the resolution of September 28th, 1898, for although the assessment was more than doubled at that time the money which flowed into the coffers of the Order in response to a call was even less than before the increase in the assessment, according to the testimony of Mr. Simering, the Secretary.

It is inconceivable that there could be any more conclusive evidence of the absence of power on the part of the corporation to collect by assessments the amounts needed to discharge its obligations. This is insolvency under the definition established in the Barton case, an insolvency resting not in the allegations of a bill the equities of which have been sworn away by the answer, but in the admissions of the defendant and the proof in the case.

It was suggested that under Section 1430 of the Insurance Act of 1894 only the Attorney-General was authorized to initiate such a proceeding, but this can hardly have been seriously urged, as the failure to make the report to the Insurance Commissioner required by that section is in no way involved in this case. See also the language of Judge Page in the Barton case (page 33).

A decree will therefore be signed appointing receivers and for the dissolution of the corporation.