# THE GUARANTEE TRUST AND BANKING COMPANY OF GEORGIA, A CORPORATION,

*vs.*

# WILLIAM J. FLANNERY.

*Subscriptions to bonds: payments in installments; sums to be repaid on date certain; accrued rights and forfeitures; subscriber not a creditor in the meaning of attachment laws.*

F. "purchased" from an agent of the Guarantee Trust Co. of Ga. a "bond" of that company to the general effect that in consideration of a certain cash payment to it, and of the payment to it of a certain sum for a certain number of consecutive months, the company obligated itself, *as trustee,* at the end of which number of consecutive payments, to pay a stipulated sum to the holders of record of the contract; there were provisions in the contract for an equitable distribution to such holders of similar "bonds" of the surplus accrued from interest, delinquencies, fees and investments, etc., and the Trust Company reserved the right to anticipate the specified date of payment, upon certain contingencies; but it assumed no obligation to pay the principal sum at any other time or date than the date specified; there was no undertaking on its part to repay, or pay, any lesser sum, or any portion of the installments paid in; the Trust Company having become insolvent, and so adjudicated, before the time specified for the payment of the sum stipulated in "F.'s" bond, "F." issued a non-resident attachment against the funds in Baltimore City to recover the sums and installments that had been paid it by him, according to the obligations of his contract: *Held,* that the transaction was not a purchase, but a subscription to be paid in a certain way and time, with rights to accrue when all the installments had been paid when and as due, and with the possibility of forfeiture in case of certain defaults.                                    p. 581

Syllabus.

Before the arrival of the time when the sum to be paid by the Trust Company was due, the purchasers of such "bonds" are not *creditors,* in the sense of the attachment laws. p. 591

A creditor is a person to whom any obligation is due, or one who has the right to require the fulfillment of an obligation.
p. 591

The insolvency of the Trust Company and the appointment of a receiver operated to mature its obligation, as a claim against the funds in the hands of the receiver, but do not constitute the holder of any of the bonds (whose installments are not all due) a creditor within the meaning of the attachment laws. p. 591

*Decided January 12th, 1915.*

Appeal from the Baltimore City Court. (SOPER, C. J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*T. Rowland Slingluff* and *A. Dana Hodgdon* (with *Slingluff & Slingluff* on the brief), for the appellant.

*Edward L. Ward,* for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

In October, 1909, the appellee purchased from an agent of the appellant a "bond," which was expressed in the following terms:

"UNITED STATES OF AMERICA.
No. 50199.
$2500. $2500.
GUARANTEE TRUST & BANKING COMPANY.

In consideration of the written and printed subscription for this coupon bond, hereby made a part of this contract, and in consideration of the payment of one hundred dollars and the further payment thereafter

of a monthly premium of twenty dollars on or before the fifteenth day of each succeeding month until one hundred and twenty monthly premiums have been paid, whereupon all payment of premiums shall cease, the Guarantee Trust & Banking Company as trustee hereby promises and guarantees that there shall be paid to the registered holder of this bond at the home office of the Company in Atlanta, Ga., the sum of

*Two Thousand Five Hundred Dollars*

and this bond's equitable proportion of the surplus accrued from interest, delinquencies, investments and fees, from similar bonds which will be apportioned to all such bonds sold the same calendar year. It is further expressly provided and agreed that this bond and coupons attached hereto · are · issued and accepted subject to the terms and conditions of the application herefor and the terms and conditions hereto attached, which are made a part of this contract as if printed on the face hereof.

Issued at the home office, Atlanta, Ga., this the eleventh day of October, 1909.

S. E. Smith,

H. S. Miles,                                         President.
Secretary."

Attached to the bond were "terms and conditions," eleven in number to which reference will be made later. There were also attached fourteen coupons, each for the sum of $31.25, falling due serially on the first days of January and July, the last of them maturing January 1, 1920.

A year later the appellee purchased a second of the same general description of "bond," which differed somewhat in phraseology from the first, in that the coupons were specially referred to, the matured value was stipulated to be paid in gold, and the proportion of accrued surplus was to be determined as of the first day of March, 1921. There were still more marked differences in the conditions attached to the bond. A stipulation for the retirement of the bond when the

accumulated profits to its credit should amount to $2,500 was omitted, the loan value which was 70% of the credit of the reserve in the first bond was increased to 80%, and some other minor variations. These differences are, however, of little or no importance in this case.

In June, 1913, the Guarantee Trust & Banking Co. was found to be insolvent, and receivers were appointed for it in Georgia, the State of its domicil. At the time when the adjudication of insolvency was made Mr. Flannery had paid $940, on account of the "bond" first agreed to be taken by him, and $700 on the second. Learning of some funds in the City of Baltimore belonging to the Guarantee Trust & Banking Co., in October of 1913 he sued out a non-resident attachment under which he sought to recover the $1,640, so paid by him. To this suit the Trust Company voluntarily appeared and contested the short note case. It is from the judgment rendered against it in that case that the present appeal is taken.

The case, therefore, in no way involves any question of the right of a foreign receiver to maintain a suit in our Courts, but only the contractual rights of the parties under the "bonds," so called. If the appellee was not a creditor of the defendant he could not maintain a suit against it, and the case should have been withdrawn from the consideration of the jury.

Whether he was or was not a creditor is the sole question in the case.

It is proper, *in limine,* to have clearly in mind certain matters. The purchase, so called, of the bonds was not a purchase in the true sense of that term, it was rather a subscription to be paid in certain regular instalments, with rights to accrue when all of the instalments had been paid, and with the possibility of a forfeiture of the instalments paid upon the happening of certain defaults, and it was in reliance upon a certain number of such defaults that the scheme was possible of fulfillment, and in no other way.

By the terms of the contract, in consideration of the 120 consecutive monthly payments, the Trust Company obligated itself that there should be paid to the holder of record of the contract a stipulated sum, but reserved the right to anticipate the specified date of payment upon the happening of certain conditions; it assumed no obligation to pay the sum at any other time or date, but it did agree as to an amount which it would loan on the contract after the expiration of two years from the date of the making. There was no undertaking to pay, or repay any lesser sum or any portion of the instalments which might have been paid in. The Trust Company did in addition agree to make itself a trustee for the benefit of the subscriber to the "bonds," thus placing him in the position of a *cestui que trust.* This did not in any way create a relation of debtor and creditor. That relation could not arise until Mr. Flannery had fully performed his part of the contract, that is, until he had paid the 120 instalments.

Various definitions have been given by the Courts of the term creditor. In the matter of Putman, 193 Fed. 464, a creditor is said to be "a person to whom any obligation is due, one who has the right to require the fulfillment of an obligation," and in the case of the *Chestnut St. Trust & Savings Fund Co.'s Est.,* 217 Penn. 151, it is said that "a creditor of an estate is one who has a definite demand against the estate or a cause of action capable of adjustment and liquidation upon a trial." Suppose that prior to the appointment of the receivers, Mr. Flannery had sued the Trust Company for the money which he had paid in, up to the time of the bringing of his suit, no such claim could be entertained for a moment under the contract which had been entered into.

What, if any, change was wrought by the appointment of receivers? It operated to mature the obligation of the Trust Company as a claim against the funds in the hands of the receivers; *Union Trust Co.* v. *Belvedere Hotel Co.,* 105 Md. 507; but it did not make Flannery a creditor of the Trust

Company in the sense in which that word is used in the attachment law.

Numerous cases were cited by the appellee to support his contention, and special reliance was placed on the case of the *Southern Building Association* v. *Price,* 88 Md. 155. An examination of these cases shows, that in every instance where the remedy by attachment was allowed, the plaintiff, suing as a creditor, was the holder of a matured claim, as in the Price case, where the holder of stock in a non-resident Building Association under the by-laws of the association had the right to withdraw, and had given his notice of withdrawal in such season as to have matured his right to payment before the appointment of receivers.

In the view of this Court the present case falls directly within the principle laid down in *Failey* v. *Fee,* sometimes known as the *Iron Hall case,* 83 Md. 83, in which this Court approved a distribution by the ancillary receivers appointed in this State to such claimants as held matured certificates, and directed the payment of the balance of the fund over and above the amounts required to satisfy such creditors to the receiver appointed by the Court of Indiana. It, therefore, follows that there was error in refusing the first and second prayers offered by the defendant, and the judgment below must be reversed. As the effect of this would be to withdraw the case from the jury, the case will not be remanded for a new trial.

In the view above taken, the fourth prayer, as to whether the contract was a Maryland or a Georgia one, becomes immaterial, and it is unnecessary to pass upon it.

> *Judgment reversed, without a new trial, with costs to the appellant.*