## In re WILHELM.
### No. 9118.

District Court, D. Maryland.

Nov. 25, 1938.

Irving B. Grandberg, of Baltimore, Md., for trustee.

Edward Pierson and Leon H. A. Pierson, both of Baltimore, Md., for Nash-Kelvinator Corp.

Samuel J. Aaron, of Baltimore, Md., for Sterling Refrigerator Co.

CHESNUT, District Judge

The decision as to the status of these two claims involves the proper construction and application of the Maryland statute (1935 Supp.Ann.Code of Maryland, Art. 21, § 55), requiring the recording of conditional contracts of sale, and providing that on failure thereof, they shall "be void as to third parties without notice until" so recorded.[1] The claimants are re-

---

[1] The full text of the statute is as follows:

"55. Every note, sale or contract for the sale of goods and chattels, wherein the title thereto, or a lien thereon, is reserved until the same be paid in whole or in

spectively conditional vendors who have filed petitions for possession of the articles sold, and the trustee in bankruptcy is opposing the petitions. In both cases the conditional contracts were recorded, but in one case not until six days after the article sold was delivered to the vendee, the subsequent bankrupt, and in the other case seven days thereafter. In each case the trustee contends that there was a "subsequent creditor" who became such between the delivery of possession of the article conditionally sold and the recording of the contract. For convenience they may be referred to as "intervening creditors". The question in the case is whether the so-called intervening creditors are to be treated as "subsequent" creditors, within the meaning of the statute as construed by the Maryland Court of Appeals. The Referee ordered that the petitions for re-possession be overruled, but with leave to the claimants to file claims as general creditors. Both claimants have filed petitions to review the orders of the Referee.

In the case of the Nash-Kelvinator Corporation claim the facts appear in the certificate and order of the Referee; and in respect to the claim of the Sterling Refrigerator Company they appear in the Referee's findings of fact and conclusions of law, although considerable additional testimony was introduced on the hearing here, which, however, I find did not greatly change the findings of fact made by the Referee.

In more detail the facts affecting the claim of the Sterling Refrigerator Company are these. The bankrupt was engaged in the retail confectionery business, and for that purpose contracted to buy a "refrigerator case" under conventional form of conditional sale contract. The case was delivered to the bankrupt on February 11, 1938, and promptly put into temporary use although certain incidental attachments were not delivered and installed until February 26, 1938. The total purchase price was $786.25, of which $534.25 remained due at the time of filing the petition in bankruptcy on September 27, 1938. The contract was recorded February 17, 1938. The only possible subsequently intervening creditor is Frey & Son, a wholesale grocer, who, as an unsecured creditor, filed a claim in the bankruptcy estate in the total amount of $164.73 for balance due on deliveries of merchandise between December 16, 1937, and February 22, 1938, of which, however, there was only one delivery (February 12, 1938 in the amount of $14.23) between February 11th and February 17th. The additional testimony at the hearing showed that in December of 1937 the bankrupt established a line of credit and began a running account with Frey & Son. Pursuant thereto from time to time orders for merchandise were given and currently filled by Frey & Son. The order for the delivery made on February 12, 1938 was given a day or two prior to February 11th, which was the date on which the refrigerator case was delivered to the bankrupt.

With respect to the claim of the Nash-Kelvinator Corporation the facts are as follows. The bankrupt bought under a conditional sale contract a "beverage cooler" for the total sum of $182.65, of which amount $105.68 remained due at the time of bankruptcy. The sale contract was dated December 2, 1937, and the beverage cooler was delivered to and fully installed in the bankrupt's premises on December 6, 1937, and the contract was recorded on December 13, 1937. The only possible subsequent or intervening creditor in this case was the Chamberlain Metal Weatherstrip Company with which the bankrupt entered into a contract on November 23, 1937 for

---

part, or the transfer of title is made to depend upon any condition therein expressed and possession is to be delivered to the vendee, shall, in respect to such reservation and condition, be void as to third parties without notice until such note, sale or contract be in writing, signed by the vendee, and be recorded in the Clerk's office of the Superior Court of Baltimore City, or in the Clerk's office of the Circuit Courts of the various counties, as the case may be, where the vendee resides, or in the case of a corporate or partnership vendee, then where such vendee has its principal place of business in the State of Maryland; and such recording shall be sufficient to give actual or constructive notice to third parties when a memorandum of the paper writing signed by the vendee or vendees, setting forth the date thereof, the amount due thereon, when and how payable and a brief description of the goods and chattels therein mentioned shall have been recorded with the Clerk aforesaid, but it shall not be necessary that said paper writing shall be acknowledged or an affidavit made to the consideration therein expressed as in the case of bills of sale."

442

certain weatherstripping work to be done, the material and work for which was furnished and performed by the Company on December 8, 1937, for the contract price of $21, which remained unpaid at the time of the bankruptcy.

As already stated, the question in the case is whether in either or both of the above situations there was a subsequent intervening creditor between the delivery of the articles sold to the bankrupt, and the date of the recording of the conditional sale contract. Neither the diligence of counsel in the case nor an independent somewhat extensive research has brought to light any decided case as a precedent for the exact question here presented, either in the Maryland decisions on the statute or in analogous situations elsewhere. The Maryland statute is possibly unique in its provision that the conditional sale contract is void as to third parties without notice until recorded; and in that no period of time is allowed by the statute for the recording of the contract after its execution and delivery of the article sold.[2] The statute has been several times applied in this district but apparently in only three cases in which the contract was recorded some time after its execution. In re Shipley, D.C., 24 F.2d 991, Judge Coleman held that the contract was valid as against the trustee in bankruptcy because there was no proof in the case as to any intervening creditor between the date of the conditional sale and the recording thereof.[3]

It will be noted that the statute uses broad general words in describing the classes of persons who can attack a conditional sale for lack of record. They are described simply as "third parties without notice". The decisions of the Maryland Court of Appeals are express to the effect that this description includes not only lien creditors but also general unsecured creditors, with the limitation, however, that

they must be *subsequent* and not *prior* creditors, with respect to the time of the conditional sale. Roberts & Co. v. Robinson, 141 Md. 37, 118 A. 198; Stieff v. Wilson, 151 Md. 597, 135 A. 407; Gunby v. Motor Truck Corporation, 156 Md. 19, 142 A. 596; Meyer Motor Car Co. v. First Nat. Bank, 154 Md. 77, 140 A. 34. And this distinction between prior and subsequent creditors has been recognized and applied in bankruptcy cases involving the statute in this district and in the Circuit Court of Appeals for the Fourth Circuit. In re Rosen, D.C., 23 F.2d 687; In re Shipley, D.C., 24 F.2d 991; In re Sachs, 4 Cir., 30 F.2d 510; Enterprise Fuel Co. v. Jones, Trustee, 4 Cir., Nov. 14, 1938, 99 F.2d 928.

The Maryland statute was first enacted in 1916. Before then it was the doctrine of the Maryland Court of Appeals that a bona fide purchaser for value of an article conditionally sold and not recorded would be protected; but other persons were not. In this respect the statute changed the former rule. The development of the Maryland law upon the subject is succinctly stated by Judge Soper, when district judge, in United States v. Torres, D.C., 291 F. 138, 140, 141.

While the decided cases clearly distinguish between the rights of prior and subsequent creditors, none of them consider or determine the controlling principle to be applied in deciding whether a particular creditor is to be classified as antecedent or subsequent in a situation such as we have here on the particular facts. Of course it is not difficult to determine who is a creditor in the sense of the bankruptcy law. In Guarantee Trust & Banking Co. v. Flannery, 124 Md. 586, 590, 93 A. 152, 153, it was said:

"Various definitions have been given by the courts of the term 'creditor.' In the Matter of Putman (D.C.) 193 F. 464, a

---

[2] The Uniform Conditional Sales Act, Vol. 2 Uniform Laws Ann. § 5 (which has not been adopted in Maryland) provides as follows:

"§ 5. *Conditional sales void as to certain persons.*—Every provision in a conditional sale reserving property in the seller, shall be void as to any purchaser from or creditor of the buyer, who, without notice of such provision, purchases the goods or acquires by attachment or levy a lien upon them, before the contract or a copy thereof shall be filed as hereinafter provided, unless such con-

tract or copy is so filed within ten days after the making of the conditional sale."

[3] In Re Universal Storage & Transfer Co. on the petition of Remington Rand, Inc., in an unrecorded oral opinion filed Oct. 31, 1933, I followed In re Shipley and denied the petition for repossession, as there were admittedly subsequent intervening creditors. And November 14, 1938 the Fourth Circuit Court of Appeals affirmed per curiam a like decision by Judge Coleman in the case of Enterprise Fuel Co. v. Jones, Trustee, 99 F.2d 928.

creditor is said to be 'a person to whom any obligation is due, one who has the right to require the fulfillment of an obligation,' and in the case of the Chestnut St. Trust & Savings Fund Co.'s Est., 217 Pa. 151, 66 A. 332, 118 Am.St.Rep. 909, it is said that 'a creditor of an estate is one who has a definite demand against the estate, or cause of action capable of adjustment and liquidation upon a trial.' "

In the instant case the so-called intervening creditors clearly did not become "creditors" in this sense until their merchandise was delivered or their services performed during the period which intervened between the conditional sales and the recording thereof respectively. But the question to be decided here is not merely when they become "creditors" but whether they are prior or subsequent creditors within the contemplation of the statute as construed by the Maryland court. And this is the question to be now determined. As there is no precedent we must search for the answer in the purpose and intent of the statute as interpreted and revealed in the Maryland and federal decisions applying the statute. For clarity and brevity significant expressions in the opinions now to be reviewed will be italicized. In Roberts & Co. v. Robinson, 141 Md. 37, 43, 45, 118 A. 198, 200, the Court said:

"The *creditors who trusted* Keel, in ignorance of the plaintiffs' secret reservation of interest in the property which they committed *to his apparent ownership,* were undoubtedly included among the *'third persons without notice'* for whose protection the act was passed. If it had been intended to protect only purchasers and lienors, that purpose would have been expressed. The general terms employed indicate that the statute was designed to safeguard the interests of all persons, acting without notice of the unrecorded contract, who would be *injuriously affected* if it were permitted to be enforced. * * * It is not necessary to determine generally in this case the rights and remedies of judgment creditors holding executions returned unsatisfied, but it is sufficient to state our conclusion that they are entitled, in view of our statute, to challenge a lien or title dependent upon an unrecorded agreement of which they were unaware *when their claims were contracted.*"

In Stieff v. Wilson, 151 Md. 597, 135 A. 407, it was said [page 409]:

"It is a recording statute, and it is to be presumed that it does not intend any departure from the well-known American theory and purpose of recording claim to title, that is, to protect persons who might *subsequently* deal with the property and part with *value* for it, without notice of the earlier conveyance."

And in Gunby v. Motor Truck Corporation, 156 Md. 19, 25, 142 A. 596, the opinion of the court quotes the above sentence from Stieff v. Wilson, itself italicizing the same words. The purpose and intent of the statute is even more explicitly interpreted by Judge Soper in United States v. Torres, supra, 291 F. 141, as follows:

"It is manifest that the general purpose of the act of 1916 was the protection of creditors and other persons who might deal with a vendee under an unrecorded conditional sale contract, upon the assumption that the vendee was the owner of the property, free from the lien or claim of any one else. The cases in 122 Md., cited above, had demonstrated to the public and to the Legislature that the Maryland law afforded protection only to a bona fide purchaser, and in order to extend the protection of the law to other persons who might be deceived by the apparent *absolute ownership of the vendee* the act of 1916 was passed. As was said by the court in Roberts & Co. v. William E. Robinson et al., supra: 'The statute was designed to safeguard the interests of all persons, acting without notice of the unrecorded contract, who would be injuriously affected if it were permitted to be enforced.' It is fair to assume that the court had in mind such persons as would be *injuriously affected* because of some act which they had done, or omitted to do, *relying upon the apparent unqualified ownership of title by the vendee.*"

And in the Rosen Case, supra, 23 F.2d 689, Judge Soper also said:

"The purpose of the law is obviously to protect creditors who *subsequently trust* the buyer on the faith of his ostensible ownership, and to compel the seller to record his lien in order to preserve it."

There are other Maryland recording statutes, the decisions of which furnish some analogies. The Code of 1924, Art. 21, § 51, provides:

"Mortgages of personal property shall be valid and take effect, except as between

the parties thereto, *only from the time of recording;* and in case of more than one mortgage, the one first recorded shall have preference."

In Praeger v. Implement Co., 122 Md. 303, 308, 89 A. 501, 503, Ann.Cas.1916A, 1255, the Court said:

"The rule that defective or unrecorded mortgages and secret trusts cannot be enforced to the prejudice of *subsequent creditors* whose debts were contracted without notice of such mortgages or trusts, is equally as well established. Dyson v. Simmons, 48 Md. 207; Textor v. Orr, 86 Md. 392, 38 A. 939."

In Davis v. Harlow, 130 Md. 165, 169, 100 A. 102, 104, it was said:

"These sections have been passed upon in a long line of decisions in this state, and we must give them the force and effect they have long held to be entitled to; that is, that they are for the protection of creditors becoming such after the date of mortgages either unrecorded or defectively executed."

In Tyler Co. v. O'Ferrall, 153 Md. 353, 354, 138 A. 249, it was said in the opinion:

"The sole question for us to decide is whether the seal was essential to the validity of the mortgage. It has been decided by this court that such mortgage is good as against *prior unsecured creditors.*"

Maryland deeds are required to be recorded within six months from date by Section 13 of Article 21 of the Code. If not recorded within six months they do not affect existing creditors or creditors becoming such between the date of the deed and the date of its record. Hearn v. Purnell, 110 Md. 458, 466, 72 A. 906; Hoffman v. Gosnell, 75 Md. 577, 590, 24 A. 28. And by section 32 of Article 21, mortgage deeds of an interest in land must be recorded as other deeds, and with like effect if not so recorded. Sixth Ward Building Ass'n v. Willson, 41 Md. 506, 514. Many deeds were not recorded within time. We find that as early as 1785 the Legislature by ch. 72, § 11, which, with amendments, is now to be found in the Maryland Code, Art. 16, § 35, provides that in such cases under certain conditions deeds may nevertheless by order of court be recorded and become effective, but with a proviso saving the rights of purchasers *without* notice, and the further proviso "nor shall such deed, though recorded as aforesaid, in any manner affect the credi-

tors of the party making such deed, *who may trust such party* after the date of the said deed." It will be noted that the wording of this italicized phrase is the same phraseology used in some of the above quotations from court decisions. See, also, Dyson v. Simmons, 48 Md. 207, 218 (an old but leading case in Maryland on this subject). In Nally v. Long, 56 Md. 567, the facts of the case are not in point but the court said:

"The protection secured by the Code to subsequent creditors, is given to those 'who may trust such party after the date of such deed.' Code, Art. 16, sec. 23; Dyson v. Simmons, 48 Md. [207] 219. The inquiry then is, when did the sureties trust Newman, the principal debtor? When did the implied obligation of the latter to the former arise? The answer to this question is, that this implied obligation *arose at the time the suretyship was entered into.*"

The principle that I deduce from this review of the cases is that a *subsequent* creditor, in the purview of the statute, is one who (after the conditional vendee has taken possession of the article conditionally sold) deals with the vendee and extends credit to him *in reliance upon his apparent and ostensible ownership* of the thing sold (by virtue of his possession), where such a creditor has no notice either constructively from the record or otherwise of the vendor's reserved lien. On this principle it seems reasonably clear, in the instant cases, that the so-called intervening creditors were not subsequent creditors within the meaning of the statute as construed by the Maryland court. It is evident that in neither case did the creditor act in reliance upon the bankrupt's ostensible ownership of the property because the credit was agreed to be given prior to the bankrupt's possession of the articles conditionally sold, and without even knowledge on the creditors' part of the intended acquisition of the property by the purchaser.

If, in principle, a contrary view is to be adopted and creditors in similar situations are to be held entitled as subsequent creditors to successfully attack the conditional sale, the possible consequences of such a holding should be kept in view. Under the Maryland decisions the conditional sale is void only as to subsequent and not as to antecedent creditors; and in a situation such as we have here only as to subsequent creditors who intervene between the date

of the sale and the date of the record thereof. Where, as in the present case, the contract of conditional sale is recorded within a very few days, it is likely the amount of intervening claims will be small. In such cases the conditional vendor could probably obtain relief by paying off the intervening creditors if necessary to protect his lien. But when the conditional vendee goes into bankruptcy the effect is to avoid the vendor's lien entirely as to all creditors, if there is any one subsequent creditor. In re Rosen, D.C., 23 F.2d 687; Moore v. Bay, 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133, 76 A.L.R. 1198; In re Sachs, 4 Cir., 30 F.2d 510. We may suppose the following hypothetical case. A large apartment house corporation is in need of new electric refrigerators for all of its 100 separate apartments. Not having available cash to buy them outright, it enters into a conditional sale contract whereby they are supplied at a total cost of $10,000, of which only $1,000 is paid on account. Assume that they are all delivered and installed within five days, say February 1st to 5th, but the conditional sale contract is not recorded until February 10th. Assume also that the apartment house corporation has a running account and a thirty-day credit with a coal dealer who on January 31st receives in the ordinary course of business an order for a ton of coal, price $10, to be delivered to the apartment house for its heating apparatus, and promises to and does deliver the same on February 8th without knowledge or notice of the new refrigerator equipment. By this contrary view the lien on the refrigerators would be lost if the apartment house corporation shortly thereafter goes into bankruptcy; with the inequitable result that a large loss is imposed on the conditional vendor in consequence of a few days' delay in recording his lien, and other creditors adventitiously benefited to the extent of $9,000, although no one of them has parted with any value or otherwise acted in reliance on the bankrupt's ostensible ownership of the refrigerators.

Another supposititious case may also be taken. Assume in the above case of the apartment house corporation that the order given to the coal dealer is for not one but fifty tons of coal, price $500; that this amount is beyond the established line of credit, and before accepting the order the coal dealer makes a special visit to the apartment house to look over its general condition for the purpose of determining whether the credit shall be given, and then sees the newly installed refrigerators, and in reliance thereon but without knowledge of the lien thereon, agrees to give the further credit and delivers the coal two days *after the lien is recorded*. In such a case is the coal dealer to be prejudiced by the enforcement of the lien? He would be if the time of delivery rather than the date of contracting for the credit is to determine whether he is a prior or subsequent creditor because in such a case he has constructive notice of the lien when he makes delivery.

It is necessary for future cases, as well as for this, to draw the line of distinction between prior and subsequent creditors somewhere. Bearing in mind the constantly recurring insistence in the Maryland and federal decisions above reviewed that the intent of the statute was to protect creditors *acting* on the faith of ostensible ownership, it seems probable and reasonable that the Maryland view of the statute draws the line through the point of time when the creditors *contract* for the credit, rather than when they perform their previous contracts. True it is that the conditional vendor can only surely protect his lien by immediate record contemporaneous with delivery to the vendee because a creditor may successfully attack the vendor's lien without showing actual reliance on the obvious possession of the vendee, as he will be presumed to have relied thereon, if he extends credit when the vendee in fact has possession under the unrecorded contract. This seems to follow necessarily from the language of the statute and the decisions construing it; but it seems quite unnecessary to extend the penalty of the statute against the conditional vendor to situations where creditors by giving credit prior to the bankrupt's possession have manifestly not relied thereon. The statute greatly extends the protection of the law in favor of the innocent creditor, who is really prejudiced by a secret lien, but it seems unlikely that it was intended to unjustly enrich creditors who have suffered no actual prejudice, at the expense of conditional vendors, at a time when financing through conditional sales is so common. At least until the Maryland court authoritatively rules to the contrary, it is proper for this court to act on these considerations.

For these reasons I conclude that the orders of the Referee must be reversed

446

and the petitioners in these cases held entitled to an order for the re-possession of the articles conditionally sold by them; or to the balance due them respectively under their conditional sale contracts, if the trustee elects to retain and sell the articles. Counsel may present the appropriate orders therefor.